COGGINS *v.* STATE.

No. 39279          November 1, 1954          75 So. 2d 258

50

*W. D. Gary,* Eupora; *H. C. Coleman,* West Point, for appellant.

*Wm. E. Cresswell,* Asst. Atty. Gen., Jackson, for appellee.

KYLE, J.

The appellant was indicted, tried and convicted in the Circuit Court of Webster County on a charge of manslaughter for the killing of Clyde Jenkins by culpable negligence, and was sentenced to the state penitentiary for a term of three years. From that judgment he prosecutes this appeal.

The deceased met his death as a result of an automobile accident that occurred on U. S. Highway No. 82, approximately 1½ miles east of the Town of Eupora, on September 13, 1952, between 6:30 and 7:00 o'clock P.M. The testimony of the State's witnesses showed that the 1941 Ford automobile which the deceased was driving had entered the highway from a graveled road running northwardly from the highway to the home of the deceased, and that the automobile had proceeded westwardly along the highway approximately 200 feet, when

it was struck by a 1948 Buick automobile driven by the appellant which was proceeding westwardly along the highway at a rapid rate of speed. The Ford car exploded and caught on fire immediately and after proceeding a considerable distance down the highway and over a borrow pit and embankment on the south side of the highway right of way came to rest near a barn 339 feet from the point on the highway where the Buick car had collided with it. When the highway patrolmen arrived a few minutes later, the deceased was seated on the steps of a dwelling house near by. His clothing and body were badly burned. He was carried to a hospital at Houston for medical treatment, but died about eight hours later.

The main point argued by the appellant's attorney as ground for reversal on this appeal is that the lower court erred in overruling the appellant's motion for a directed verdict at the conclusion of the State's evidence and in refusing to grant the peremptory instruction requested by the appellant at the conclusion of all of the evidence.

In passing upon this point it is necessary that we have clearly in mind the essential elements of the charge of involuntary manslaughter by culpable negligence in a case of this kind.

■■■ In the case of Smith v. State, 197 Miss. 802, 20 So. 2d 701, 161 A. L. R. 1, the Court said: ''The gist of the offense of involuntary manslaughter with a motor vehicle is criminal negligence, which must be wanton or reckless under circumstances implying danger to human life.  *  *  *  It must be negligence so wanton or reckless as to be incompatible with a proper regard for human life.  *  *  *  In other words, culpable negligence should be defined as the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as a result of the willful creation of an unreasonable risk thereof.'' See also, Coleman v. State, 208 Miss. 612, 45 So. 2d 240; Sullivan v. State, 213

Miss. 14, 56 So. 2d 93; Faust v. State, 212 Miss. 464, 54 So. 2d 724. ██ ██ The Court also said in the Smith case, supra, "While it was not necessary to either allege or prove that the killing was 'wilfully' done, within the strict meaning and common acceptation of that term, it was, nevertheless, incumbent upon the state in this character of case to prove beyond a reasonable doubt that the act of the defendant was unlawful and felonious; that is to say, that he was guilty of such gross negligence on the occasion complained of as to evince on his part a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of his act under the surrounding circumstances as to render his conduct tantamount to wilfulness."

The testimony of the witnesses in this case may be briefly summarized as follows:

Mrs. Clyde Jenkins, the wife of the deceased, testified that she was in the 1941 gray Ford automobile with her husband at the time of the accident. She and her mother-in-law were seated on the front seat of the car, and her three little boys were seated on the back seat. She stated that the lights on the car, including the tail light, were burning. When they got to the highway they stopped. They could see approximately a quarter of a mile eastwardly down the highway. There was a glare of light around the bend in the highway, but there was no car in sight. Her husband turned the car into the highway toward Eupora, and the car was proceeding westwardly at a rate of speed of 25 or 30 miles an hour when it was struck from behind by another automobile and exploded. Two cars were approaching from the west at the time of the accident.

J. O. Gary testified that he arrived at the scene of the accident about dark. Clyde Jenkins was sitting on Mr. Ferguson's steps when he arrived, and two of the little boys were lying there by him. Jenkins' clothing

was badly burned; his face was parched to a crisp; his hair was burned off; and the flesh was hanging on his arms.

Marshall Lumpkin, a state highway patrolman, testified that he received information about the accident about 6:45 P.M., and arrived at the scene of the accident a few minutes later. He found the Buick automobile on the right hand side of the highway right of way headed westwardly against the highway embankment. The 1941 Ford car was down in a lot, on the opposite side of the highway, and was burning. Another Ford automobile and a 1948 Pontiac were parked on the shoulder of the highway facing eastwardly. The witness examined the Ford car that was burning and found that it had been struck in the rear and was badly damaged. It was smashed in the back, the gasoline tank was driven up in the back and the car was afire. The witness also examined the Buick car, and found that the whole front end of the Buick was mashed in. In the right hand lane of the highway traveling west the witness found debris where the Ford car had been struck. The debris was 67 steps west of the point where the graveled road intersected the highway. There were no skid marks. The evidence indicated that the Buick had turned off to the right and had run into the highway embankment after the wreck; and that the Ford had proceeded down the highway, then angled across the highway and across the barrow pit, up a 6 or 7 foot embankment, and across the front of an adjoining lot into a small crib. The Ford car had traveled a total distance of 339 feet after being struck. There were no signs of tire marks on the pavement indicating that the brakes had been applied. The witness stated that it was about 350 feet from the point where the gravel road intersected the highway to the crest of the incline running eastwardly toward Stark-ville.

C. H. Moore, also a member of the State Highway Patrol, accompanied Patrolman Lumpkin to the scene of the accident; and Moore's testimony was substantially the same as that of Lumpkin. Moore stated that one standing on U. S. Highway No. 82 at the point of intersection of the graveled road and looking eastwardly could see between a quarter and a half mile down the highway, and looking westwardly approximately a quarter of a mile. Moore stated on cross examination that he saw the appellant and his two companions down in the road ditch by the side of the Buick car when he arrived at the scene of the accident. He was asked whether he smelled any whiskey on the appellant, and his answer was, "There was a general smell of different scents, and I couldn't detect one from the other at the scene."

Joe Bell, a colored preacher, testified that he was driving eastwardly along the highway at the time of the accident, and that he saw the two automobiles coming toward him. He was trailing another automobile that was proceeding eastwardly in front of him. When the collision occurred, the Ford car driven by Clyde Jenkins exploded, and when the car passed him it was on fire and was running at a rapid rate of speed. Bell stated that he got out of his car and picked up the children. He then examined the Ford car that was on fire. "It seemed that the whole back end was knocked up where the back seat ought to have been." He also examined the Buick and found that the damage to the Buick was on the front end. He opened the door of the Buick and the driver fell out. Bell moved him to one side, and then helped another one of the occupants out of the car. He did not notice any odor of whiskey on any of them. Bell stated that he saw the lights on the Ford car prior to the time that it exploded. He was about 50 yards from the car when it exploded.

Cecil Allen, the constable, testified that he went to the scene of the accident and saw the appellant and his

two companions out there by the appellant's car, and that he could smell whiskey on all of them.

F. A. Crossland testified that he was driving a 1947 model Chevrolet truck westwardly along the highway toward Eupora, and was about a quarter of a mile east of the scene of the accident when the wreck occurred. He was driving at a rate of speed about 45 miles an hour. He saw the Buick automobile approaching from the rear when it was about three-fourths of a mile behind him. The Buick passed him within less than half a mile at a rapid rate of speed. It passed on the yellow line coming up the grade. As the witness got to the top of the hill a light colored car was driven into the highway from the graveled road that entered the highway from the north. The car turned westwardly toward Eupora. The Buick car continued its course down the highway and hit the light colored car from behind. The car that came out of the graveled road was on its own side of the highway at the time it was struck. Crossland stated that he kept his eyes on the Buick car from the time it passed him until the wreck occurred. He estimated that the Buick was running at a rate of speed of about 95 miles an hour at the time of the collision. Crossland admitted on cross-examination that he had been convicted in the justice of the peace court and the mayor's court of the unlawful possession and sale of intoxicating liquor and had paid a fine for it.

The appellant, testifying in his own behalf, stated that he and his two companions, C. M. Prewitt and Herbert Barnes, a painter, left West Point in the Buick car about 5:15 p. m. and were on their way to Greenwood to see about getting some help for Barnes on a painting job. The appellant was driving the car. The appellant stated that when he came over the hill a short distance east of the point of intersection of the graveled road with the paved highway the Ford automobile pulled out in front of him. There were no lights on the Ford car, and the appellant was meeting another

car at the time which failed to dim its lights. The appellant stated that he was driving at a rate of speed of approximately 55 miles an hour; that he was only 30 or 40 feet from the Ford car when he saw it; and that there was no way to avoid striking it. The appellant stated that he had not been drinking intoxicating liquor at any time during the day. He stated that he did not pass a truck of any kind within a mile or a mile and a half of the place where the accident occurred. The appellant stated that he was injured in the wreck and was taken to Curry's Clinic in Eupora in an unconscious condition. He stated he had never been convicted of any offense and had never been arrested for violating any traffic law.

Clovis M. Prewitt, who was in the car with the appellant, testified that no intoxicating liquor had been drunk by any of the occupants of the car from the time they left West Point until the time of the accident. He was asked whether the appellant had been drinking during the afternoon, and his answer was, ''Well, if he was I didn't smell it on him and I couldn't tell it.'' He testified that the Buick automobile was being driven at a rate of speed of about 50 or 55 miles an hour when the accident occurred; that he saw no tail light on the Ford car; and that it looked like the Ford car was not more than 20 feet in front of them when he saw it. He stated that he too was knocked unconscious by the collision.

Jack Palmer, an automobile mechanic, who lived at Eupora, testifying for the appellant, stated that he saw the 1941 Ford car Tuesday or Wednesday before the wreck on Saturday, as he was traveling eastwardly on the highway, and that the car had no tail light at that time. W. A. Savage testified that he heard F. A. Crossland talking about the wreck a few days after the wreck, and that Crossland said that he met the Buick car at some place beyond the place where the wreck occurred.

The State recalled Marshall Lumpkin as a witness in rebuttal, and Lumpkin testified that he saw Clovis Prewitt and Herbert Barnes in the waiting room at the doctor's clinic after the accident. He observed Prewitt's condition, and from the odor that he smelled while talking to him it appeared that Prewitt had been drinking alcoholic liquor, and that he was under the influence of intoxicating liquor in some form. C. H. Moore, who was also recalled as a witness in rebuttal, testified that he saw Prewitt within an hour after the accident at the clinic, and that he could definitely smell alcohol on him at that time.

It is earnestly argued on behalf of the appellant that the evidence was insufficient to justify the jury's finding that the appellant had been guilty of culpable negligence in bringing about the death of the deceased.

It is contended that the proof failed to show that the appellant was under the influence of intoxicating liquor at the time of the accident, and that the verdict of the jury therefore rests entirely upon the uncorroborated testimony of the witness Crossland concerning the excessive rate of speed at which the appellant was driving. But the record shows that the State's charge of culpable negligence was not based entirely upon the testimony of the witness Crossland. There was other evidence, both direct and circumstantial, to support the jury's finding. The bodily injuries inflicted on the Ford car showed that it had been struck from behind with terrific force; and the fact that the Ford car after being struck continued its course down the highway and into the borrow pit and up the highway embankment and finally came to rest in a barn yard 339 feet from the point of impact afforded additional proof of the force of the impact and the rate of speed at which the Buick car was traveling at the time of the impact. It is true that the appellant claimed that he was driving at a rate of speed of only 55 miles per hour, and that the Ford automobile pulled out in front of him when he came

over the hill a short distance east of the point of intersection of the graveled road, and that he was only 30 or 40 feet from the Ford car when he saw it and could not avoid hitting it. But it is difficult to reconcile these claims with the testimony of the two highway patrolmen, who testified that the point of impact was 67 steps west of the graveled road intersection, and the testimony of Joe Bell, who testified that he saw the lights from the Ford car before it exploded, and that he was about 50 yards from the car when it exploded.

The evidence in our opinion was sufficient to justify the jury's finding that the appellant was guilty of the crime charged against him in the indictment; and there was no error in the action of the trial judge in overruling the appellant's motion for a directed verdict at the conclusion of the State's evidence, or in refusing to grant the peremptory instruction requested by the appellant at the conclusion of all of the evidence.

The next point argued by the appellant's attorney is that the court erred in permitting the witness Crossland to testify as to the speed of the automobile driven by the appellant at the time the appellant passed him on the highway and at the time of the collision. But we think that the objection to this testimony has been fully answered in the opinion rendered by this Court in the case of Bennett v. Hardwell, 214 Miss. 390, 59 So. 2d 82, and that the testimony of the witness Crossland was competent under the circumstances in this case.

It is next argued that the court erred in refusing to grant an instruction requested by the appellant that the jury should find the appellant not guilty, "if there were any intervening causes in this cause which may have brought about the death of the deceased." The meaning of the instruction is not entirely clear. But there was no error in the action of the trial judge in refusing to grant the instruction, for the reason that

there was no proof of any intervening causes which may have brought about the death of the deceased in the record; and the rule is well-settled that, where there is no evidence upon which to predicate an instruction, it is proper for the court to refuse to grant it. 53 Am. Jur., p. 455, par. 579.

The instruction was properly refused for the additional reason that it did not contain a correct statement of the rule of law applicable in cases of this kind; and, if the instruction had been granted in the form requested, it would have been misleading to the jury. After reading the instruction the jurors might reasonably have concluded that, even though they believed from the evidence that the appellant killed the deceased by his culpable negligence, it was their duty to acquit the appellant if there were other intervening causes which contributed to the fatal accident.

■■■ The rule is well settled in cases of this kind that, ''The negligence of the deceased or of a third person is not a defense to a prosecution for a homicide resulting from the operation of a motor vehicle, although it may be considered on the issue of whether the accused was criminally negligent or whether his conduct was the proximate cause of the homicide.'' 61 C. J. S., p. 778, Motor Vehicles, par. 663. If it be shown in a case of this kind that the acts of the accused which are charged as criminal have proximately caused the death of the deceased, proof of the fact that another person may have been guilty of some negligent act which may have contributed to the fatal accident does not relieve the accused of criminal liability for the homicide. Austin v. State, 101 Fla. 990, 132 So. 491; Graives v. State, 127 Fla. 182, 172 So. 716; Vaca v. State, 150 Neb. 516, 34 N. W. 2d 873; Hubbard v. State, 36 Ala. App. 110, 53 So. 2d 631.

■■■ The appellant in his brief contends that the refusal of the court to grant the above mentioned instruction had the effect of preventing him from having

the jury consider the failure of the driver of one of the cars approaching from the west to dim his lights as a factor in determining the issue of whether the appellant's negligence was the cause of the death of the deceased. But the jury heard the appellant's testimony concerning the failure of the driver of the approaching car to dim his lights; and the refusal of the court to grant the above mentioned instruction did not deprive the appellant of the right to have the jury consider that testimony as a factor in determining whether the appellant's negligence was the proximate cause of the death of the deceased. But that testimony did not constitute proof of an intervening cause relieving the appellant from criminal liability for the homicide; and the appellant was not entitled to an instruction which in effect told the jury such testimony might be regarded as proof of an intervening cause entitling the appellant to an acquittal, even though the jury might believe from the evidence that the appellant killed the deceased by his culpable negligence.

We have examined the other assignments of error which have been referred to in the appellant's brief. But none of them is of sufficient importance to justify a detailed discussion in this opinion.

There was no error in the action of the trial judge in permitting the patrolman, C. H. Moore, to testify that he found several whiskey bottle tops in the Buick car when he examined the car at the scene of the accident.

We think that the court should not have permitted Marshall Lumpkin to testify in rebuttal that the witness, Clovis Prewitt, was under the influence of intoxicating liquor when he saw him at the Curry Clinic in Eupora sometime after the parties had left the scene of the accident. But if there was error in the admission of the testimony, such error in our opinion was harmless, and we would not be justified in reversing the judgment on that account.

 There is no merit in the appellant's contention that the court erred in overruling the appellant's motion for a new trial on the ground that Cecil Allen, a witness for the State, appeared to be acting as a bailiff to the jury during the trial. The testimony offered in support of the motion wholly failed to show that Allen assumed to act as a bailiff or that Allen had any contacts with the jury during the trial.

We find no reversible error in the record, and the judgment of the lower court is affirmed.

Affirmed.

*McGehee, C. J.*, and *Hall, Holmes* and *Gillespie, JJ.*, concur.