798 So.2d 550 (2001)
Tammy LANGDON a/k/a Tammy Michele Langdon, Appellant
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00852-COA.
Court of Appeals of Mississippi.
February 27, 2001.
*553 Willard L. McIlwain Jr., Greeneville, for Appellant.
Office of the Attorney General by Dewitt T. Allred III, for Appellee.
Before McMILLIN, C.J., BRIDGES, and MYERS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. Tammy Langdon has appealed her conviction for negligently causing the death of another while driving a motor vehicle at a time when she was under the influence of alcohol. She urges this Court to find (a) that the trial court improperly prevented her from introducing evidence of a prior inconsistent statement by an eyewitness to the vehicular accident, (b) that the trial court erroneously excluded her proposed expert witness on DUI testing procedures, (c) that the trial court permitted the State to introduce evidence of other bad acts (specifically Langdon's tendency to drink alcoholic beverages to excess) in violation of the rules of evidence, (d) that the trial court improperly limited defense counsel's closing argument, and (e) the court improperly admitted the results of testing of Langdon's blood alcohol content conducted shortly after the accident. Additionally, Langdon alleges a series of errors in the trial court's rulings on the propriety of certain jury instructions requested by the defense. We find ourselves unpersuaded by these claims of error and affirm Langdon's conviction and resulting sentence.

*554 I.

Facts
¶ 2. Langdon, while driving alone at night on an unlit stretch of county road in Bolivar County, struck and killed Willie Webber, a pedestrian who was walking along the shoulder of the road with a female companion, Debra Green. Langdon admitted to having consumed several beers earlier in the evening, but denied that she was impaired by alcohol consumption at the time of the accident. An intoxilyzer test conducted after the accident indicated that Langdon's blood alcohol content stood at .118%. A blood sample was obtained from Langdon approximately fifty-two minutes after the intoxilyzer test. The blood sample was subjected to chemical analysis that indicated a blood alcohol content of .10%.
¶ 3. Langdon's version of events was that she was driving along the road at a safe rate of speed and in her proper lane of travel when Webber suddenly either jumped or was shoved off the shoulder and into the roadway in her path of travel at a time when it was too late for her to avoid striking him. Green, on the other hand, testified for the State and said that she and Webber were walking on the gravel shoulder adjacent to the paved roadway when Langdon's vehicle suddenly veered onto the shoulder and struck Webber. The defense called three witnesses who testified that Green had given a different version of the events in conversations with them after the accident. In those versions, Green had apparently suggested that, in the moments immediately preceding the accident, Webber was making unwanted physical advances against her and that, in an effort to deflect those advances, she either shoved Webber into the roadway, or he fell into the path of Langdon's vehicle as he attempted to pull away from her grasp, or he jumped into the roadway to avoid a blow she had directed at him. The jury, apparently finding Green's trial testimony believable, despite the impeachment of her testimony through these prior inconsistent statements, found Langdon guilty and this appeal ensued.

II.

The First Issue: Prior Inconsistent Statement
¶ 4. The official accident report compiled by Bolivar County Deputy Sheriff James Moorehead indicated that Green, on the night of the accident, had related a version of the events to Deputy Moorehead that was largely consistent with those extrajudicial statements related by three defense witnesses. The defense sought to introduce that portion of the accident report into evidence for impeachment purposes, but the trial court did not allow its introduction. Langdon now claims this as prejudicial error since the report contained evidence of a prior inconsistent statement by the witness that was, on its face, admissible to impeach Green. Knickel v. State, 764 So.2d 1247(¶ 15) (Miss.Ct.App.2000).
¶ 5. While Langdon's legal premise is correct, there arise certain unusual factual considerations in this case that affect our determination of whether reversible error occurred. It is a matter of pure logic that, in order to admit a prior inconsistent statement by a witness for purposes of impeachment, there must be competent evidence that such a prior statement was, in fact, made. In this case, the defense attempted to prove the fact of Green's prior inconsistent statement through the testimony of Deputy Moorehead since he was the person alleged to have heard the statement and he had subsequently memorialized that statement in his written accident report.
*555 ¶ 6. However, the defense's proof in that regard hit a snag when Deputy Moorehead testified at trial that the pertinent entry on his accident report did not accurately reflect the version of events related to him by Green. By way of explanation, he said that he had taken a recorded statement from Green on the night of the accident, but had prepared the written accident report some time later and did so without refreshing his memory of the contents of Green's recorded statement. It was for that reason he said that his written version of Green's statement in the accident report did not accurately reflect the actual contents of Green's verbal statement.
¶ 7. Moorehead's testimony in that regard was not contradicted or impeached, and for that reason there was no basis to conclude that the defense had proven the existence of a prior inconsistent statement made by Green recorded in Deputy Moorehead's report. Once Moorehead disavowed the accuracy of his recollection of Green's statements as recorded in the accident report, there was no reasonable basis to conclude that Moorehead's report constituted evidence that Green had given a different version of events prior to trial. For that reason, it was not error to exclude the accident report for the limited purpose for which it was offered.
¶ 8. Langdon argues alternatively that the report was admissible for the purpose of impeaching Deputy Moorehead himself. The only possible point of Moorehead's testimony that would be subject to impeachment by introduction of the accident report would be to cast into doubt Moorehead's trial testimony that Green had not reported to him that Webber had suddenly jumped or been shoved into the path of Langdon's vehicle. The only result of successfully impeaching Moorehead on that point would be to cast that denial into doubt. Casting doubt on Moorehead's testimony denying having heard such a statement could not be used as affirmative evidence that Green had, in fact, made such a statement. Since that was the relevant disputed issue regarding the contents of the accident report, merely casting the matter into doubt would not advance the defendant's case in any respect. Therefore, the trial court's failure to admit the report to impeach Deputy Moorehead cannot be seen as error.

III.

The Second Issue: The Defendant's DUI Expert Witness
¶ 9. Robert Dismuke, a private investigator with extensive background experience in the administration of DUI testing by law enforcement officers, was called by the defense as an expert witness. However, he was prevented from testifying as to such matters as his understanding of the rate of alcohol absorption into the bloodstream and its subsequent dissipation, based upon which he was prepared to offer an opinion that Langdon's percentage of blood alcohol would have been under the legal limit at the time of the accident.
¶ 10. The trial court concluded that Dismuke's education, experience, and backgroundwhich was admittedly generally limited to training and experience in the proper administration of DUI testing proceduresdid not establish his expertise on those scientific subjects about which he proposed to testify. The threshold question of whether a proposed expert witness has the requisite credentials to offer opinion evidence helpful to the jury, whether obtained through education or experience, lies with the trial court. McBeath v. State, 739 So.2d 451(¶ 9) (Miss.Ct.App.1999). The trial court's decisions as to such matters are reviewed on an abuse of discretion standard. Id. We find it entirely reasonable *556 to suppose that the areas of expertise as to which Dismuke proposed to testify required some demonstrated expertise in such scientific fields as human physiology and chemistry, and that Dismuke's qualifications as demonstrated by his testimony failed to show that he possessed such specialized knowledge. We do not find error in the trial court's refusal to permit Dismuke to testify as proposed by the defense.

IV.

The Third Issue: Other Bad Acts Evidence
¶ 11. Langdon elected to testify in her own defense. During cross-examination, she insisted that, though she had consumed a number of beers prior to the accident, she had not consumed a sufficient quantity to have impaired her ability to properly operate her automobile. The prosecution inquired as to whether Langdon made it a practice to routinely consume quantities of alcoholic beverages. Defense counsel objected but the objection was overruled. Now on appeal, Langdon urges that this was reversible error. Her theory is that this line of questioning was intended to implant in the jury's mind the proposition that Langdon was given to excessive use of alcohol and, by planting that seed, make it appear more likely that she had overindulged on the particular night.
¶ 12. Specifically, Langdon urges that this was a Rule 404(b) violation in that it involved the introduction of evidence of prior bad acts for the sole purpose of demonstrating a trait of the defendant's character in order to suggest that, at the times critical to the case, she was acting in conformity with that trait. M.R.E. 404(b).
¶ 13. One evident problem with this argument is that no such evidence was introduced. In response to inquiries from the prosecuting attorney, Langdon in each instance emphatically denied that she habitually drank to excess. She, in fact, made her denials in advance of the objections lodged with the court as to the subject of the inquiry. The State made no attempt to prove any allegation of habitual abuse of alcohol by other means.
¶ 14. We would agree as a pure proposition of law that evidence tending to indicate that Langdon made a practice of consuming excessive quantities of alcohol on a regular basis might run afoul of the exclusionary rule announced in Rule 404(b). Edwards v. State, 737 So.2d 275(¶ 16) (Miss.1999). To that extent, it would appear that the trial court probably erred in failing to sustain defense counsel's objections to such questioning. However, as we have observed, the inquiries were met with flat denials and no attempt was made by the State to contradict those denials or to impeach Langdon's credibility on that particular point. We do not, in the context of this record, find that the mere inquiry by the State, improper though it may have been, was so prejudicial to a fundamentally fair trial as to require this Court to intervene. Not every error in the introduction of evidence requires reversal. Brown v. State, 764 So.2d 463(¶ 29) (Miss. Ct.App.2000). Rather, so long as such errors do not substantially prejudice the defendant, they may be excused as harmless error. Id. We find the trial court's failure to sustain the defendant's objections to this aspect of the State's cross-examination to fall within the harmless error standard.

V.

The Fourth Issue: Improper Limitation of Closing Argument
¶ 15. Langdon asks this Court to conclude that her defense counsel was unreasonably hindered by two rulings of the *557 trial court sustaining objections to statements made in final argument. She points out the general proposition that her counsel was entitled to wide latitude in arguing her case to the jury. See, e.g., McGilberry v. State, 741 So.2d 894(¶ 44) (Miss.1999); Wells v. State, 698 So.2d 497, 506 (Miss. 1997).
¶ 16. In moving from that general proposition to the particulars of her case, Langdon points to two occurrences. First, defense counsel was arguing that there was no direct evidence indicating that any witness ever observed Langdon in an inebriated state. Counsel went on to state that, if such a witness existed, there could be little doubt that the State would have produced that witness. The State objected, claiming that such an argument was purely speculative, and the court sustained the objection. Langdon now claims that, by so ruling, the trial court left the jury with the impression that the trial court considered any claim of Langdon's sobriety to be based on speculation.
¶ 17. This argument is without merit as having no basis in fact. The objection by the State was not to the general argument advanced by the defense that there was less than satisfactory proof that Langdon was, in fact, impaired. Rather the objection was to the narrow part of that argument that, if a witness existed who saw Langdon in a drunken state, the prosecution would surely have produced the witness. Certainly such an assertion is, in its best light, merely argumentative and has the potential to confuse the jury to some extent. Proof of impairment from alcohol consumption may be shown in any number of ways besides eyewitnesses observing the person's behavior or appearance. The defense argument improperly suggested that the State's inability to produce a witness who claimed to see Langdon in an inebriated condition was somehow conclusive on the question of Langdon's impairment. It was not error to stop further argument along those lines.
¶ 18. That Langdon's defense counsel was not hampered in his attempts to make his larger point concerning the paucity of evidence of Langdon's intoxication can best be seen from the fact that, immediately after the trial court sustained the prosecution's objection, defense counsel was permitted to continue in the same general vein without objection as follows:
There's no proof before the Court of this lady's intoxication. No proof of her staggering. No proof of any slurred speech, nothing. Not one scintilla of evidence.
¶ 19. Even were it conceded for sake of argument that the trial court should not have sustained the State's objection, we are satisfied that the ruling had so little impact on the defense's ability to advance its assertion of the lack of evidence of Langdon's intoxication that it would unquestionably have been harmless error.
¶ 20. Secondly, Langdon urges that her counsel was unduly restricted in making his summation when he was prevented from telling the jury about his own daughter's view of the case after having talked to her about it. Defense counsel, in prefacing his remarks concerning his daughter's view of the matter, informed the jury that his daughter was also a beer drinker. The trial court sustained the State's objection at that point so that we are left to speculate as to how defense counsel's daughter may have sized up the case. Nevertheless, we are satisfied that this apparent attempt to introduce "expert" opinion testimony through hearsay during closing argument did not fit within the proper boundaries of summation, which must contain itself to the facts of the *558 case and the proper application of the law to those facts. Clemons v. State, 320 So.2d 368, 371-72 (Miss.1975). The argument proposed to be advanced by defense counsel whatever it might have beenwould have clearly been substantially outside the proper area of focus for summation. We find no error in the trial court's rulings on objections during summation.

VI.

The Fifth Issue: Blood Testing
¶ 21. Langdon urges that the trial court erred in admitting evidence of breath analysis and a subsequent chemical blood analysis performed to determine the level of alcohol content in her bloodstream. Her complaints arise out of what she perceives to be various defects in the testing procedures as dictated by the statutes relating to the gathering of such information.
¶ 22. The primary problem with this issue as it relates to the blood testing is that the defense did not challenge the admissibility of the results of the blood testings at the trial level. This Court may not put a trial court in error as to a matter that it was never offered the opportunity to rule on. Sanders v. State, 678 So.2d 663, 670-71 (Miss.1996).
¶ 23. As to the admissibility of the intoxilyzer test, the objection was that certain blanks on the test form relating to time of detention and time of testing were not filled in. That information, necessary to prove the interval between time of last consumption and time of testing necessary to give the test validity, was provided by other evidence besides the form itself and we do not find the incomplete form to be sufficient ground to exclude the test evidence altogether.

VII.

The Sixth Issue: Jury Instruction on Negligence of Others
¶ 24. Langdon complains that she was denied a requested instruction that would have required the jury to acquit her if it found that Webber's death was "caused by the negligence of Debbie Green and not the negligence of Tammy Langdon." Rather than give the instruction in that form, the trial court modified the instruction to insert the word "solely" in reference to Debbie Green's negligence so that the instruction as given required the jury to acquit if it concluded that the death was "caused solely by the negligence of Debbie Green and not the negligence of Tammy Langdon." (emphasis supplied).
¶ 25. We find such amendment to be entirely proper. It brought the instruction in line with existing precedent relating to crimes involving culpable negligence to the effect that proof that the negligence of another (whether the victim or some third party) may have combined with the defendant's own negligence to contribute to the fatal accident is not, of itself, sufficient to absolve the defendant of criminal liability. Coggins v. State, 222 Miss. 49, 62, 75 So.2d 258, 264 (1954). We acknowledge that Coggins is a culpable negligence manslaughter case brought under a different criminal statute; nevertheless, we conclude that the principles governing the effect of the victim's contributory negligence on the defendant's guilt would have equal application to a DUI homicide case such as this.

VIII.

Issue Seven: Instruction regarding Proof of Accident Constituting Proof of Negligence
¶ 26. Langdon requested an instruction often given in civil negligence actions that *559 stated simply that "the mere fact that an accident has occurred is not of itself evidence of any negligence on the part of anyone." The trial court refused to give that instruction and that ruling is now said to constitute reversible error.
¶ 27. Without considering the question of the value of that instruction in a civil case, we have little difficulty in concluding that the failure to give such a seemingly self-evident statement in this case did not deprive the jury of any knowledge of the law vital to its deliberations. The obligation of the trial court is to see that the jury is fully instructed on the applicable law. Turner v. State, 748 So.2d 706(¶ 7) (Miss.1999). It is not to give every instruction requested by either party merely because the instruction is arguably a correct statement of some abstract legal principle. Estate of Lawler v. Weston, 451 So.2d 739, 741 (Miss.1984). In this case, the instructions read as a whole fully informed the jury as to its obligations and it was not reversible error to omit this requested instruction.

IX.

Issue Eight: Instruction regarding Alcohol Consumption
¶ 28. Langdon asserts that the trial court committed reversible error in refusing to instruct the jury that the mere act of ingesting alcohol is not, in itself, negligence. We disagree that this failure to instruct was error. There was no contention by the State and no argument faintly suggesting that the prosecution was urging such a proposition. Aside from being correct statements of the law, instructions must have some relevance to the particular facts of the case being tried and must have the potential to aid the jury in its deliberations. Walker v. State, 740 So.2d 873(¶ 61) (Miss.1999). The requested instruction could not have served to assist the jury in its fact-finding and appears to be merely argumentative. As is our duty, we have reviewed the instructions in their entirety and have concluded that the jury was properly instructed as to the critical facts it had to resolve in order to properly decide the case and the proper verdict to return based upon the manner in which it resolved those disputed issues of fact. Starcher v. Byrne, 687 So.2d 737, 742 (Miss.1997). The failure to give the requested instruction, which could have done nothing to further enhance the jury's understanding of its duties, was not error.

X.

Issue Nine: The Weight of the Evidence
¶ 29. Langdon asks this Court to reverse her conviction on the basis that the verdict of guilty is against the weight of the evidence. While there were conflicting versions of the events causing Webber's death, the duty of resolving such conflicts lies with the jury. Brooks v. State, 769 So.2d 218(¶ 30) (Miss.Ct.App.2000). When called upon to set aside a jury verdict on this ground, we must review the evidence in the light most favorable to upholding the verdict. Id. at (¶ 31). None of the witnesses for the prosecution were substantially impeached, nor was their testimony inherently incredible or otherwise demonstrated to be unworthy of belief. If that evidence is accepted as trueand we must assume the jury did so findit established all the critical elements of the crime. We, therefore, conclude that the verdict in this case was not so against the weight of the evidence as to convince us that to permit it to stand would be a manifest injustice.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY OF CONVICTION OF VEHICULAR HOMICIDE AND SENTENCE *560 OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED IS AFFIRMED. THE SENTENCE IMPOSED IN THIS CAUSE SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLANT.
KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS, JJ., concur.
CHANDLER, J., concurs in result only.