CHANDLER, J.,
for the Court.
¶ 1. Mr. Willie Thomas was issued a speeding ticket by Mississippi Highway Patrol Officer Albert Johnson for traveling ninety-two miles per hour in a fifty-five mile-per-hour zone. Mr. Thomas’s son Lonzo was in the car at the time. Approximately twelve minutes after the ticket was issued, Mr. Thomas, who was intoxicated at the time, wrecked his vehicle, causing fatal injuries to his son. Lonzo’s heirs sued the Mississippi Department of Public Safety (“MDPS”) and Officer Johnson for not checking Mr. Thomas for driving under the influence. The Circuit Court of Pike County, Mississippi, granted judgment in favor of MDPS and Officer Johnson. Cheryl Thomas, the mother and legal heir of Lonzo, appeals, raising the following issues:
I. DID OFFICER COLLINS COMMIT PERJURY, AND IF SO, DOES THIS PERJURY MANDATE A NEW TRIAL OR A DIRECTED VERDICT IN FAVOR OF THOMAS?
II. WAS THERE SUFFICIENT EVIDENCE TO SUPPORT THE DECISION OF THE LOWER COURT?
III. DID THE TRIAL COURT APPLY AN INCORRECT LEGAL STAN *791 DARD AS TO CHERYL THOMAS’S BURDEN OF PROOF?
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. At 4:50 p.m., Officer Albert Johnson was headed north on Highway 51 when he clocked Mr. Willie Thomas (“Mr. Thomas”) headed south going ninety-two miles per hour in a fifty-five mile-per-hour zone. Mr. Thomas’s 15-year-old son, Lonzo, a spina bifida patient who was paralyzed from the waist down, was in the car with him. Officer Johnson turned around, pursued Mr. Thomas for approximately two to two and a half miles, and eventually stopped Mr. Thomas in Mrs. Mary Ann Montgomery’s yard. At this time, Mr. Thomas’s blood alcohol concentration (“BAC”) was greater than .1825, but Officer Johnson claimed that he never smelled alcohol on Mr. Thomas and had no reason to check him for driving while intoxicated. Mr. Thomas told Officer Johnson that he had stopped in this yard to buy some tick hounds from a male friend. Mrs. Montgomery told Officer Johnson that her husband was dead, she did not have any dogs for sale, and she wanted him off her property. Officer Johnson wrote the speeding ticket, told Mr. Thomas to leave the premises, and both he and Mr. Thomas left.
¶ 4. Mr. Thomas left Mrs. Montgomery’s premises, drove eight miles, and wrecked his van, producing injuries to Lonzo that eventually caused his death. Mr. Thomas sustained minor injuries. At 5:07 p.m., someone discovered the wreck and called the hospital.
¶ 5. James Carlton, a emergency medical technician (“EMT”), came in the first ambulance to arrive at the scene of the accident, at 5:15 p.m. He testified that he could definitely smell alcohol on Mr. Thomas’s breath, even though he never got close to Mr. Thomas’s mouth. Gina Davis, a paramedic, was in the second ambulance, which arrived at the scene at 5:25 p.m. and left at 5:33 p.m. She stated that she could smell alcohol on Mr. Thomas’s breath and the smell was fairly strong. Todd Pounds, an EMT who was with Ms. Davis, prepared the ambulance record and wrote in the record, “Patient smells strongly of alcoholic beverage.” At 6:02 p.m., Mr. Thomas was admitted to the emergency room, where the emergency room physician examined him and wrote, “Breath smells of alcohol.” He stated that he would not take documenting the presence of alcohol lightly.
¶ 6. At the hospital, Cheryl Thomas, Lonzo’s mother and Mr. Thomas’s wife, stated that she could smell alcohol strongly in the emergency room where Mr. Thomas was being treated. Cheryl and the rest of the family waited in a room, where Cheryl demanded that a blood alcohol test be taken of Mr. Thomas. Officer Collins administered the test and allegedly stated that Mr. Thomas “reeked of alcohol.” The test was administered at 6:20 p.m. and showed a BAC of .1825.
¶ 7. Cheryl Thomas (“Thomas”, subsequently referring to all of Lonzo Thomas’s heirs) sued MDOC and Officer Johnson for failure to check Mr. Thomas for driving under the influence. The trial court, applying the Mississippi Tort Claims Act, Miss.Code Ann. § 11-46-9 (Rev.2000), found that Officer Johnson’s failure to check Mr. Thomas’s sobriety did not rise to the level of reckless disregard required for Thomas to recover against the State.
ANALYSIS
I. DID OFFICER COLLINS COMMIT PERJURY, AND IF SO, DOES THIS PERJURY MANDATE A DIRECT- • ED VERDICT IN FAVOR OF THE PLAINTIFF OR A NEW TRIAL?
¶ 8. MDPS called Officer Collins as a witness. On appeal, Thomas claims that *792 Officer Collins committed perjury. Thomas and her family claim that Officer Collins told them that Mr. Thomas “reeked of alcohol,” but on the witness stand he repeatedly and consistently testified that he did not smell alcohol on Mr. Thomas’s person or breath. Officer Collins also testified that Gina Davis had told him that she did not smell alcohol emanating from Mr. Thomas at the accident scene, even though Gina Davis testified on the stand that Mr. Thomas smelled alcohol.
¶ 9. Officer Robert Harrell, who conducted a search warrant of Mr. Thomas’s van two days after the accident, read into evidence the affidavit for search warrant that he signed. It states in part:
Sergeant Collins told affiant that he arrived at the scene of the accident, he went to check the injuries of the driver of the vehicle, Mr. Thomas M. Thomas. When Sergeant Collins questioned Mr. Thomas, he smelled a faint odor of an alcohol [sic] beverage on his person. Sergeant Collins then asked the Emergency Medical Technician if she smelled an alcoholic beverage on Mr. Thomas. The EMT concurred with Sergeant Collins that she smelled an alcoholic beverage on Mr. Thomas.
On this evidence, Thomas’s counsel moved for a directed verdict, which the court denied.
¶ 10. On appeal, Thomas urges this Court to grant a new trial. The determination of whether a new trial should be granted on the basis of newly discovered evidence (i.e., perjury) must be made, by the trial court, on a case-by-case basis, taking into account all relevant facts and circumstances. Smith v. State, 492 So.2d 260, 263 (Miss.1986) (superseded by statute on other grounds). The determination as to whether the newly discovered evidence is such as will probably change the result if a new trial is granted is to be determined by the trial court in its discretion. Id. (citing Townsel v. State, 228 Miss. 110, 120, 87 So.2d 481, 485 (1956)). Our scope of inquiry on appeal is to determine whether the trial court abused its discretion in making this determination, as well as- making the determination of whether the allegations were sufficiently proven. Id. (citing Howell v. State, 354 So.2d 1124, 1127 (Miss.1978)).
¶ 11. We are unable to grant a new trial on the basis of Officer Collins’ testimony because the plaintiff must be able to show (1) that any such perjury was sufficiently proven and (2) the result of a new trial would be different from the one reached. Williams v. State, 669 So.2d 44, 54 (Miss.1996) (citing Moore v. State, 508 So.2d 666, 668-69 (Miss.1987)). In this case, Thomas has difficulty proving that Officer Collins committed perjury in the first place. The Mississippi Court of Appeals defined the standard in which a new trial should be granted on the basis of perjury in Golleher v. Robertson, 830 So.2d 694, 697 (¶ 11) (Miss.Ct.App.2002). It stated:
To warrant the granting of a new trial on the ground of newly discovered evidence, it must appear that the evidence is such as will probably change the result if a new trial is granted, that it has been discovered since the trial, that it could not have been discovered before the trial by the exercise of due diligence, that it is material to the issue,, and that it is not merely cumulative, or impeaching.” Meeks v. State, 781 So.2d 109(¶ 8) (Miss.2001).
In this case, the trial judge allowed Officer Collins and Officer Harrell to be fully examined and cross-examined. His testimony- not to have smelled alcohol against the conflicting affidavit is impeachment, not perjury, and the affidavit stating that he detected a faint smell of alcohol makes it cumulative with other witnesses who testi *793 fied that they smelled alcohol on Mr. Thomas’s breath. The trial judge himself stated that he was troubled by Officer Collins’ testimony, indicating that it had little if any effect on his decision.
¶ 12. To argue that Officer Collins committed perjury, Thomas invokes Pierce v. Heritage Properties, Inc., 688 So.2d 1385 (Miss.1997). In Pierce, the plaintiff perjured several stages of discovery, including in depositions and at trial. Indeed, the Pierce court emphasized the fact that the plaintiff had repeatedly lied under oath and made it clear that their holding was limited to only exceptional fact situations: “[T]he focus must be on the intentional nature, as well as the pattern, of the plaintiffs conduct, which included deliberately proving false statements in three discovery mechanisms: the answers to interrogatories, the request for production of documents, and the deposition testimony.” Pierce, 688 So.2d at 1389 (citing Smith v. Cessna Aircraft Co., 124 F.R.D. 103, 107 (D.Md.1989)). In this case, we do not have a pattern of perjury on the part of Officer Collins. Although Officer Collins stated seven times on the witness stand that he did not smell alcohol on Mr. Thomas, he could have believed in good faith that this testimony was true, even if it is inconsistent with his affidavit. After all, the trial was held nearly two years after the date of the accident, and he could have forgotten what his observations were. A person who claims that a witness has committed perjury must prove it by clear and convincing evidence. Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss.1984). Thomas has not met this burden.
¶ 13. Thomas invokes Pearson v. State, 428 So.2d 1361 (Miss.1983), to claim that a new trial should be granted on the basis of Officer Collins’ perjury. However, Pearson actually works in favor of affirming the trial court’s decision. In Pearson, the Mississippi Supreme Court affirmed the circuit court’s refusal to grant a directed verdict, even though some witnesses allegedly perjured themselves, because the alleged perjury had no effect on the verdict. Pearson, 428 So.2d at 1363. Likewise, Officer Collins’ testimony ultimately was inconsequential to the trial court’s holding.
II. WAS THERE SUFFICIENT EVIDENCE TO SUPPORT THE DECISION OF THE LOWER COURT?
¶ 14. Thomas sought to establish liability against MDOC under the Mississippi Tort Claims Act, Mississippi Code Annotated § 11-46-9 (Rev.2000), which establishes liability and immunities for governmental entities and their employees acting within the course and scope of their employment. Officer Johnson was undis-putably within the course and scope of his duties when he arrested and observed Mr. Thomas, thereby subjecting MDOC to potential liability for his acts or omissions. Under the statute, in order to prevail against MDOC, it is necessary for the trial court to find that Officer Johnson, in not detecting Mr. Thomas’s drunkenness, acted “in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury.” Miss.Code Ann. § 11 — 46—9(l)(c) (Rev. 2000). For Thomas to successfully appeal, we must find that the trial judge abused his discretion in finding that Officer Johnson did not act in reckless disregard for the safety of Lonzo and the public in general. Goforth v. City of Ridgeland, 603 So.2d 323, 329 (Miss.1992); Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989).
¶ 15. As a highway patrol officer, Officer Johnson was required to learn DUI detection techniques.[1] The instruction of *794 DUI detection comes from a manual called DWI Detection and Standardized Field Sobriety Tests, which Mississippi highway officers must learn as part of their training. The overall concept, stated in page IV-1, of the manual, is as follows:
The detection process begins when the police offender first suspects that a DWI violation may be occurring and ends when the officer decides that there is or there is not sufficient probable cause to arrest the suspect for DWI.
■Your attention may be called to a particular vehicle or individual for a variety of reasons. The precipitating event may be a loud noise; a cloud of dust; an obvious moving violation; behavior that is unusual, but not necessarily illegal; an equipment defect; or almost anything else. The initial “spark” of detection may carry with it an immediate, strong suspicion that the driver is under the influence; or only a slight, ill-formed suspicion; or even no suspicion at all at that time. In any case, it sets in motion a process wherein you focus on a particular individual and have the opportunity to observe that individual and to accumulate additional evidence.
¶ 16. The DUI detection process consists of three stages. The first stage is the “detection in motion” stage, where the police officer observes any erratic driving and anything else that would constitute the possibility of a DUI. In the second stage, the officer takes notice of the characteristics of the driver himself. In this stage some of the questions the police officer must ask are, “When I approach the vehicle, what do I see? When I talk with the driver, what do I hear, see and smell? How does the driver respond to my questions? Should I instruct the driver to exit the vehicle? How does the driver exit? When the driver walks toward the side of the road, what do I see?” The third and final stage is pre-arrest screening, consisting of tests such as horizontal gaze nystag-mus, walk and turn, and one leg stand. Officer Johnson observed Mr. Thomas in stages one and two of DUI detection, but he did not perform any pre-arrest screening tests. ■
¶ 17. To argue that there was insufficient evidence to support the trial court’s decision, Thomas challenges the credibility of Officer Johnson.' Mr. Thomas’s sister testified that she could smell alcohol on Mr. Thomas’s breath immediately before he drove off from her home, at 4:45 p.m. In addition, three emergency management technicians, an emergency room physician and Thomas could all corroborate that they could smell alcohol on Mr. Thomas. Thomas presents two possible explanations as to Officer Johnson’s omission. If Officer Johnson smelled alcohol and allowed Mr. Thomas to leave, it was reckless disregard. Alternatively, if Officer Johnson did not notice Mr. Thomas’s drunkenness in spite of the manifestations that he was drunk, Officer Johnson showed utter incompetence in his job, exhibiting reckless disregard for not subjecting Mr. Thomas to field sobriety tests. We are not persuaded by this assessment.
¶ 18. Thomas urges that the most compelling reason for Officer Johnson to have administered the field sobriety tests is the sheer speed that Mr. Thomas was driving his van. To substantiate the argument, *795 she relies on the language of the DWI detection manual, which states, “Drinking drivers are more likely than other drivers to take excessive risks such as speeding or turning abruptly.” Officer Johnson himself admitted that speeding alone is enough to call attention to the fact that the driver may be under the influence. The trial judge acknowledged that driving ninety-two miles per hour was both “foolish” and “dangerous.” Thomas points out other facts in the case that are indicia of recklessness. The section of Highway 51 where Officer Johnson stopped Mr. Thomas is very hilly, and many residential streets intersect with Highway 51. Officer Johnson’s pursuit of Mr. Thomas lasted approximately 2 miles, raising the possibility that Mr. Thomas had something to hide. And Officer Johnson knew that Mr. Thomas had lied to him about the reason for stopping at Mrs. Montgomery’s house. We are not persuaded by these arguments. While Mr. Thomas was clearly reckless in his driving, his recklessness does not necessarily raise the presumption that he was under the influence of alcohol. The DWI manual lists twenty characteristics of drivers under the influence; excessive speed is not one of those characteristics. While the DWI manual states that drivers under the influence are more reckless than drivers not under the influence, it does not list recklessness as a characteristic indicating impairment. In fact, expert testimony revealed that Mr. Thomas did not exhibit any of the twenty cues that would indicate impairment while he was in Officer Johnson’s presence.
¶ 19. We find that the trial judge did not abuse his discretion in finding that Officer Johnson’s failure to check for DUI constituted a higher standard of care than reckless disregard. There was evidence in phase one of the DUI detection process that suggests that Mr. Thomas was sober. When Officer Johnson pursued Mr. Thomas, he noted that a proper turn signal for a left turn was executed. Officer Johnson also observed Mr. Thomas properly turn into Mrs. Montgomery’s residence and safely stop. When Mr. Thomas drove on the road leading to Mrs. Montgomery’s residence, his speed was forty to forty-five miles per hour, not an excessive speed. Officer Johnson testified that evading an arrest is not necessarily an indication of intoxication. He also testified that in his sixteen years as a highway patrolman he has stopped numerous people for speeding who are not under the influence and that he should look at other things before deciding that a driver might be intoxicated.
¶ 20. Phase two of the DUI detection process, Officer Johnson’s observations of Mr. Thomas, likewise show that Officer Johnson could have reasonably believed that Mr. Thomas was not under the influence. These factors were duly noted in the trial court’s decision and noted in expert testimony. When Mr. Thomas stopped he reached out and unfastened a latch on the outside of the door with his hand and did it without difficulty. He asked if he could get out of the vehicle to get his driver’s license, walked out of his van without staggering, and retrieved his license without fumbling and presented his license to Officer Johnson without difficulty in deciding which document was his driver’s license. Officer Johnson performed a driver’s license check with a police substation in Brookhaven and learned that Mr. Thomas had a valid license with no history. He found Mr. Thomas’s story about buying a tick hound from Mrs. Montgomery to be inconsequential because it is not unusual for sober drivers to give false statements; their nervousness in front of law enforcement officers sometimes makes them tell false or shaky stories even when they have done nothing wrong. Mr. Thomas was not injured in any way nor breathing heavily *796 or perspiring. When he left Officer Johnson’s presence, Mr. Thomas drove away-exhibiting nothing unusual or erratic about his driving. On the facts we recited, we find that there was sufficient evidence for the trial judge to hold that Officer Johnson’s omission did not rise to the level of gross, disregard for Lonzo’s safety.. In finding reckless disregard, the trial judge must look at the totality of the circumstances of Officer Johnson’s conduct. City of Jackson v. Brister, 838 So.2d 274, 279 (¶ 20) (Miss.2003). Thomas submits that it should have been painfully obvious to even a rookie highway patrolman that Mr. Thomas should have been checked for sobriety. Because there were many mitigating factors in Officer Johnson’s- favor, we cannot agree.
¶ 21. ' Family members and medical personnel at the accident scene and in the hospital all smelled alcohol on Mr. Thomas’s breath while Officer Johnson did not. Thomas submits that such a fact shows reckless disregard on the part of Officer Johnson. However, the trial judge outlined that part of the testimony very specifically. He noted that some of the persons who testified that they smelled alcohol were in enclosed places, a significant observation because the' smell would have a greater concentration in an enclosed place than it would outdoors. Expert testimony revealed that after an injury, a person’s body gets rid of alcohol not only through his breath, but also by tears, sweat, and other bodily excretions, so that an observant can smell alcohol through a person’s breath plus the other eliminants, making the concentration of alcohol stronger. Moreover, although other witnesses came into close contact with Mr. Thomas, Officer Johnson was never closer than three or four' feet to Mr. Thomas. Given Mr. Thomas’s chronic problems with alcohol abuse as shown at trial, there is also a distinct possibility that he consumed some beer after leaving the presence of Officer Johnson. We find that the trial judge did not abuse his discretion in finding that Officer Johnson’s failure to smell alcohol on Mr. Thomas constituted a higher standard of care than reckless disregard.
III. DID THE TRIAL COURT APPLY AN INCORRECT LEGAL STANDARD AS TO THE PLAINTIFF’S BURDEN OF PROOF?
¶ 22. The trial court specifically stated that Thomas would have to show reckless disregard on the part of Officer Johnson in order to recover against the State. Both parties agree that reckless disregard is the correct standard, but they disagree as to whether the trial judge properly applied this standard. The Mississippi Supreme Court defined reckless disregard in City of Jackson v. Lipsey, 834 So.2d 687, 691(¶ 16) (Miss.2003):
While we agree that reckless disregard would encompass gross negligence, we hold that reckless disregard is a higher standard than gross negligence by which to judge the conduct of officers.
“Disregard” of the safety of others is at least negligence if not gross negligence. Because “reckless” precedes “disregard,” the standard is elevated. As quoted above from Black’s Law Dictionary, “reckless,” according to the circumstances, “may mean desperately heedless, wanton or willful, or it may mean only careless, inattentive or negligence.” Id. at 1270. In the context of the statute, reckless must connote “wanton or willful,” because immunity lies for negligence. And this Court has held that “wanton” and “reckless disregard” are just a step below specific intent.. See Evans v. Trader, 614 So.2d 955, 958 (Miss.1993).
*797 Turner v. City of Ruleville, 735 So.2d 226, 229-30 (Miss.1999). “Our case law indicates ‘reckless disregard’ embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.” Id. at 230 (citing Raney v. Jennings, 248 Miss. 140, 147, 158 So.2d 715, 718 (1963)).
¶23. To support her argument that Officer Johnson acted in reckless disregard, Thomas relies on the cases of City of Jackson v. Perry, 764 So.2d 373 (Miss.2000); Maye v. Pearl River County, 758 So.2d 391 (Miss.1999); and Turner v. City of Ruleville, 735 So.2d 226 (Miss.1999). The Lipsey court distinguished these cases in this way: “The common denominator in these cases is that the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved.” Lipsey, 834 So.2d at 693 (¶ 21) (citing Maldonado v. Kelly, 768 So.2d 906, 910-11(¶11) (Miss.2000)). In Turner, the court found reckless disregard on the part of a police officer who allowed a visibly intoxicated driver to continue driving. Turner, 735 So.2d at 230(¶ 21). However, this case is distinguishable from Turner because it was not obvious, based on Officer Johnson’s observations of him, that Mr. Thomas was intoxicated. There is no evidence that Mr. Thomas was visibly intoxicated while he was in Officer Johnson’s presence.
¶ 24. In this case, the trial judge found that Officer Johnson neither appreciated an unreasonable risk nor deliberately disregarded such a risk. The court stated:
What for me is one of the most troubling issues for me in this case is why would any officer let a drinking driver go. And with my experience, almost thirty years, as a prosecutor and defense attorney and a judge, I’ve never known an officer that would ignore a drunk driver if he had known or she had known that driver to be drunk. It’s not part of my experience. In fact my experience has been the opposite.
Thomas takes exception to this statement, arguing that under this interpretation the only way to show reckless disregard would be to extract an admission of actual knowledge by the law enforcement official of an intake of intoxicating substances. We disagree with this characterization and believe that the trial judge’s experience with law enforcement officers was just one factor that he considered. The trial court’s statement should be taken into context with other observations he made. He noted that Officer Johnson had the incentive to have arrested Mr. Thomas if he had known that Mr. Thomas was drunk, because the two did not know each other personally. He also stated that the arrest and scene of the arrest were gone over minute by minute and practically second by second at trial. He noted that the arrest for speeding was in the daytime, not at night when DUIs are prevalent; that Mr. Thomas had his son in the car and not a drinking buddy; and that although Mr. Thomas’s statement about buying the dogs from Mr. Montgomery was not the truth, Mrs. Montgomery did know Mr. Thomas and she did have dogs. By the time the judge rendered his decision, he was well aware of Officer Johnson’s thought processes at the time of the arrest, and he assessed the credibility of Officer Johnson and the other witnesses. He legitimately held that Officer Johnson did not show reckless disregard in his duties. The trial judge, sitting in a bench trial as the trier of fact, has the sole authority for determining the credibility of the witnesses. See Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1265 (Miss.1987); Hall v. State ex rel. Waller, 247 Miss. 896, 903, 157 So.2d 781, 784 (1963).
¶25. Thomas also believes the court was sidetracked in discussing the constitu *798 tional protections of people who are suspected of driving under the influence. She points out, correctly, that no constitutional prohibitions stopped Officer Johnson from performing sobriety tests on Mr. Thomas. Saucier v. City of Poplarville, 858 So.2d 933, 935(¶ 12) (Miss.Ct.App.2003); Edwards v. State, 795 So.2d 554, 565-66(¶ 47) (Miss.Ct.App.2001). Thomas misinterprets the point the trial judge made in discussing constitutional protections. The judge never held that,Officer Johnson was constitutionally prohibited from performing sobriety tests on. Mr. Thomas. Instead, he wanted to emphasize the fact that DUI .detection is very difficult, in large part because constitutional considerations loom large in an officer’s decision to administer sobriety tests, and accordingly, police officers should be afforded some latitude in deciding not to check drivers for DUI. We find that the trial court’s discussion of constitutional protections was yet another mitigating factor in deciding that Officer Johnson did not show .reckless disregard. Of course, there was nothing that would have stopped Officer Johnson from asking Mr. Thomas whether he had been drinking, and- Officer Johnson in hindsight would probably have followed up with additional questions and tests. Even so, there was sufficient evidence for the trial court to find that Officer Johnson did not- act in reckless disregard for the safety of Lonzo and the public.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY IS AFFIRMED.' ALL COSTS ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, GRIFFIS AND BARNES, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.

. In Mississippi, an offense for driving under the influence of alcohol is called a DUI. Miss. *794 Code Ann. § 63-11-5 (Rev.2000). In some other states, the offense is called a DWI. The two terms have the same meaning for the purpose of this case because there is no evidence that Mr. Thomas was under the influence of anything other than alcohol. The manual by which Mississippi highway officers learn to detect violations is used in all 50 states and employs the term DWI. The term DWI is used in this opinion only when referring to the manual.