COLEMAN, JUSTICE, DISSENTING:
 

 ¶ 24. The plaintiffs bore the burden of producing evidence that the law enforcement officers in the case
 
 sub judice
 
 acted with reckless disregard. Even in light of our highly deferential standard of review, the plaintiffs failed to produce evidence that the officers in question appreciated the risk of the suspect fleeing or consciously disregarded any risk. A review of the trial court's order indicates that the trial judge based her judgment in favor of the plaintiffs on a rejection of the defenses offered by the Department rather than sufficient, affirmative proof offered by the plaintiffs to show reckless disregard on the part of the officers. In doing so, the trial court erred by reversing the burden of production. Accordingly, the trial court erred in granting judgment in favor of the plaintiffs, and I, with respect, dissent.
 

 Standard of Review
 

 ¶ 25. "A circuit court judge sitting without a jury is afforded the same deference as a chancellor."
 

 City of Jackson v. Lewis
 
 ,
 
 153 So.3d 689
 
 , 693 (¶ 4) (Miss. 2014). Accordingly, we will not disturb a circuit court's findings following a bench trial where the findings are supported by substantial, credible, and reasonable evidence.
 

 Id.
 

 However, we must reverse the circuit court's findings where they are manifestly wrong or clearly erroneous, or the court applied an erroneous legal standard.
 

 Id.
 

 "Although reasonable minds might differ on the conclusion of whether or not the officer in question acted in reckless disregard, it is beyond this Court's power to disturb the findings of the trial judge if supported by substantial evidence."
 

 Id.
 

 (citing
 
 City of Ellisville v. Richardson
 
 ,
 
 913 So.2d 973
 
 , 978 (¶ 15) (Miss. 2005) ). We review questions of law de novo.
 
 Richardson
 
 ,
 
 913 So.2d at 977
 
 (¶ 13).
 

 Analysis
 

 ¶ 26. The plaintiffs bore the burden of proving that Officers Delcambre and Thrash acted with reckless disregard.
 
 Hinds County v. Burton
 
 ,
 
 187 So.3d 1016
 
 , 1022 (¶ 17) (Miss. 2016). Therefore, the plaintiffs had to prove, by a preponderance of the evidence, both that the officers appreciated the risk of the suspect fleeing the scene and causing another accident and that they deliberately disregarded the risk and "high probability" of harm resulting therefrom.
 
 City of Jackson v. Lewis
 
 ,
 
 153 So.3d 689
 
 , 693-694 (¶ 5) (Miss. 2014). In short, plaintiffs failed to produce sufficient evidence to prove their claim.
 

 ¶ 27. Plaintiffs, in their case-in-chief, called four witnesses: Officer Thrash, Officer Delcambre, Master Sergeant Keith Bond of the Department of Wildlife, Fisheries, and Parks, and Joshua Lord. Of the four, only Officers Thrash and Delcambre had personal knowledge of the events surrounding the stop of Bernius and the factors that weighed in the decision of the officers to order Bernius to follow them to a straightaway in the river. Master Sergeant Bond testified about the contents of the report of the accident prepared by the Department, and Lord witnessed the aftermath of the underlying collision. Via none of the witnesses did the plaintiffs produce evidence that Officers Thrash and Delcambre acted with reckless disregard as the phrase is defined above.
 

 ¶ 28. Without question, at the time of the underlying incident, Officer Thrash was less experienced. The stop of Bernius was the first time he participated in stopping a boater for what turned out to be boating under the influence. Officer Thrash acknowledged that Bernius operated the boat prior to the initial stop in a manner which indicated a lack of control and recklessness. He denied knowing at the time of the stop that Bernius's blood alcohol level was elevated. After the initial stop, when Thrash pulled his boat up next to Bernius's, Bernius appeared to have good posture and did not speak in a way that Thrash could appreciate that he was slurring words. Officer Thrash testified that, other than the initial manner described above in which Bernius operated his boat coming around the river bend, he observed no signs or "behavioral anomalies" indicating Bernius did not have control of his faculties. Regarding the decision to order Bernius to follow the officers out of the river bend and to a straightaway, Thrash testified as follows:
 

 Well, at the time we were in that dangerous bend and we needed to get out of that dangerous bend to a long straightaway, and at that time we would have conducted an interview, but at that time he gave us no reasonable suspicion to believe that he had been drinking.
 

 Officer Thrash consistently denied that, at the time he ordered Bernius to follow, he had reasonable suspicion that Bernius had been drinking. He testified that, had Bernius not attempted to flee, he and Officer
 Delcambre would have questioned him and, if during questioning, he had exhibited signs of having consumed alcohol, investigated accordingly. Officer Thrash testified that he had made other stops for reckless operation and found that the boat operator had consumed no alcohol.
 

 ¶ 29. The testimony of Officer Delcambre resembled that of Officer Thrash. Officer Delcambre agreed that Bernius sped and operated his boat in a reckless manner before the stop. Officer Delcambre confirmed that the initial stop was very brief, about fifteen seconds, and that the boats never came to a complete halt but continued to move at "idle speed." Officer Delcambre did not interact with Bernius, but he did instruct Officer Thrash to order Bernius out of the bend and into a straightaway. Officer Delcambre steadfastly testified that at the time of the very brief stop, the stop was occasioned by Bernius's reckless operation of his craft and that no reasonable suspicion of boating under the influence of alcohol arose.
 

 ¶ 30. The trial judge's opinion characterized the Department's defense as resting "solely on their position that the boats were stopped in a dangerous bend of the River, that they were blocking a portion of the River...." The trial judge rejected the defense as not credible. She did not believe Officers Thrash's and Delcambre's testimony that the bend in the river was a dangerous place to stop. Of course, as the finder of fact, the trial judge is the arbiter of witness credibility. However, the plaintiff bore the burden of proof,
 
 Hinds County v. Burton
 
 ,
 
 187 So.3d 1016
 
 , 1022 (¶ 17) (Miss. 2016), not the Department. It is not enough that the trial court rejected what it viewed as the sole defense of the Department. The plaintiff must offer evidence that shows the officers acted with reckless disregard.
 

 ¶ 31. The trial judge relied heavily on the undisputed fact that Bernius's blood alcohol content later was determined to be .25 percent, but neither Officer Thrash nor Officer Delcambre knew at the time of the stop what his blood alcohol level later would prove to be. Officer Thrash testified that Bernius sat upright and with good posture. The plaintiffs failed to produce any evidence that the officers had reason to believe Bernius was intoxicated at the time of the stop. Nowhere in the record is evidence by the plaintiffs that shows either officer directed Bernius to continue operating his boat despite reaching a belief that Bernius was intoxicated. Accordingly, the Department's operating procedures, upon which the plaintiffs rely as evidence of reckless disregard, do not support the verdict, because it is undisputed that the officers never formed a reasonable suspicion that Bernius was intoxicated until well after the stop. The finding of the trial judge that the Department did not contest that its officers had failed to follow the operating procedures lacks evidentiary support. Both officers testified consistently that, because they had no reasonable suspicion that Bernius was intoxicated, the operating procedures governing boating under the influence never came into play.
 

 ¶ 32. The trial judge faults the officers for allowing Bernius to continue to operate his boat in order to move into a straightaway. However, in the absence of evidence that the officers had reason to believe Bernius was intoxicated, in my opinion, such a decision does not constitute reckless disregard, which would require that the officers appreciated the risk of Bernius again operating his boat recklessly and that they acted in disregard of that risk.
 
 City of Jackson v. Lewis
 
 ,
 
 153 So.3d 689
 
 , 693-694 (¶ 5) (Miss. 2014). The facts of the case
 
 sub judice
 
 can be contrasted with those of
 
 Turner v. City of Ruleville
 
 ,
 
 735 So.2d 226
 
 (Miss. 1999). There, the plaintiff
 alleged that a police officer had failed to stop an obviously intoxicated driver from driving.
 

 Id.
 

 at 227
 
 (¶ 2). The trial court granted the city's motion under Mississippi Rule of Civil Procedure 12(b)(6) to dismiss, but the Supreme Court reversed. We wrote, "[T]he facts pled do allege that he wrongfully and intentionally allowed a visibly intoxicated Smith to continue driving. By this alleged act, the officer allegedly showed a reckless or wanton or willful disregard for the safety of other drivers on the road, including Turner."
 

 Id.
 

 at 230
 
 (¶ 19). In today's case, sufficient evidence did not exist to support a finding that Bernius was visibly intoxicated at the time of the initial stop. Where in
 
 Turner
 
 , the trial court erred in dismissing the complaint because the plaintiff had alleged that the officer knew of the risk of the driver's intoxication and allowed him to drive anyway, in the case
 
 sub judice
 
 there is no evidence that the officers acted in similar disregard of a known risk.
 
 Lewis
 
 ,
 
 153 So.3d at 693-694
 
 (¶ 5).
 

 ¶ 33. Also persuasive is the reasoning of the Mississippi Court of Appeals in
 
 Thomas v. Mississippi Department of Public Safety
 
 ,
 
 882 So.2d 789
 
 (Miss. Ct. App. 2004). In
 
 Thomas
 
 , a highway patrolman stopped a driver for speeding and issued a speeding ticket.
 

 Id.
 

 at 791
 
 (¶ 3). After the stop, the driver drove eight miles and wrecked his van; the wreck fatally injured the driver's son.
 

 Id.
 

 at 791
 
 (¶ 4). The decedent's wrongful-death heirs filed suit against the Department of Public Safety, contending that the failure of the patrolman to check the driver for driving under the influence caused the accident.
 

 Id.
 

 at 791
 
 (¶ 7). Although three witnesses at the scene of the wreck testified that they smelled alcohol on the driver's breath, the highway patrolman who performed the stop denied smelling alcohol on the driver at the time of the stop.
 

 Id.
 

 at 791
 
 (¶¶ 3, 5). The trial court found that the patrolman's actions did not rise to the level of reckless disregard, and the Court of Appeals affirmed. The Court of Appeals reasoned, in part, as follows:
 

 There was evidence in phase one of the DUI detection process that suggests that Mr. Thomas was sober. When Officer Johnson pursued Mr. Thomas, he noted that a proper turn signal for a left turn was executed. Officer Johnson also observed Mr. Thomas properly turn into Mrs. Montgomery's residence and safely stop. When Mr. Thomas drove on the road leading to Mrs. Montgomery's residence, his speed was forty to forty-five miles per hour, not an excessive speed. Officer Johnson testified that evading an arrest is not necessarily an indication of intoxication. He also testified that in his sixteen years as a highway patrolman he has stopped numerous people for speeding who are not under the influence and that he should look at other things before deciding that a driver might be intoxicated.
 

 Id.
 

 at 795
 
 (¶ 19). The facts upon which the Court of Appeals relied are similar to the facts of the case
 
 sub judice
 
 . In today's case, the officers testified that boaters who are sober regularly are stopped for reckless boating, and they both testified that they did not observe any signs that Bernius was intoxicated during the brief stop.
 

 ¶ 34. For the foregoing reasons, the plaintiffs' proof at trial did not suffice to show that Officers Thrash and Delcambre acted with reckless disregard when they instructed Bernius to follow them to a different part of the river. I would reverse the trial court's judgment against the Department of Wildlife, Fisheries, and Parks.