# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-KA-01663-SCT

*CURTIS VALENTINE a/k/a CURTIS LEE*
*VALENTINE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2019 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY, JR. |
| TRIAL COURT ATTORNEYS: | RICHARD EARL SMITH, JR. |
| | GLENNARD MICHAEL WARREN, II |
| | KEVIN DALE CAMP |
| | LEIGH ANNE KETTLEMAN CADE |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KEVIN DALE CAMP |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: META S. COPELAND |
| DISTRICT ATTORNEY: | RICHARD EARL SMITH, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/10/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1. Curtis Valentine appeals his conviction of aggravated driving under the influence (DUI), claiming the Warren County Circuit Court erred by denying his motion for a judgment notwithstanding the verdict (JNOV) and by denying his proposed jury instruction defining "under the influence."

**FACTS**

¶2. At approximately 11 a.m. on November 22, 2016, Katherine "Katie" Nicole Martin was killed while riding as a passenger in a vehicle operated by Valentine after the vehicle failed to negotiate a sharp curve at the end of Mosley Gap Road in Vicksburg, Mississippi. The vehicle left the roadway at a high rate of speed, slammed into a tree, and skidded approximately sixty feet before coming to rest on its passenger side.

¶3. Khalil Brown, who was riding in the back seat at the time, estimated the that vehicle's speed before approaching the curve was between seventy and ninety miles per hour. He said Katie was telling Valentine to stop before the crash. A twenty-mile-per-hour speed-limit sign was posted at the site of the crash, which the vehicle hit during the crash.

¶4. Katie died at impact from severe head trauma and internal injuries. Valentine and Brown survived the crash with minor injuries, and both were able to remove themselves from the vehicle. When authorities arrived on the scene, Valentine was described as "acting crazy," "irate, walking around," and "constantly yelling."

¶5. Accident reconstructionist Connie Dolan with the Warren County Sheriff's Department was called to the scene. She smelled the odor of marijuana from inside the vehicle. Her investigation confirmed that Valentine had driven the vehicle down Mosley Gap Road at a high rate of speed and had continued straight when the road curved left. Officer Dolan found no signs of braking before the car hit the tree, and she saw no reason that anyone would not see the approaching curve. Based on the circumstances surrounding the wreck, the smell of marijuana in the car, and the fatality, Officer Dolan requested a search warrant to obtain a blood sample from Valentine.

¶6. Valentine was transported by ambulance to a local hospital, where his blood was drawn. When Valentine was informed at the hospital that Katie had died, he "went ballistic." He pushed Officer Dolan against a metal cart hard enough that she cut her arm. Hospital personnel were forced to restrain him.

¶7. Days later, Officer Dolan interviewed Valentine at his home. She learned that Valentine and Katie had spent the night together at the Battleground Campground the night before the wreck after Valentine's mother had thrown him out of her house after an argument over Valentine's drug use.

¶8. On the morning of the wreck, Valentine was several hours late for work. He was taking Katie home when the wrecked occurred. Valentine admitted taking his eyes off the road moments before the crash. Valentine also told Officer Dolan that he had been taking his mother's prescribed Xanax, and he admitted smoking marijuana the night before and the morning of the wreck.

¶9. Valentine's blood was tested by the Mississippi Crime Lab. Toxicologist Alyssa Bailey testified at trial that Valentine's blood had tested positive for Delta-9-THC (the active ingredient in marijuana), Topiramate (Topamax, an anti-seizure medication), and Alprazolam (Xanax). Bailey said Valentine was under the influence of all three drugs when his blood was drawn at the hospital after the wreck.

¶10. According to Bailey, both Xanax and Topamax are central-nervous-system depressants that can affect judgment, motor function, and coordination. They can "also increase someone's reaction time, meaning it takes longer for somebody to react to stimuli

that presents itself." She said that a combination of these drugs would have a compounding effect on the central nervous system.

¶11. Bailey said the presence of Delta-9-THC indicates that someone has used marijuana fairly recently. Delta-9-THC also has psychoactive effects that can impair motor function or coordination, cause difficulty concentrating, and increase one's reaction time, which Bailey said means that it takes longer to react to a stimulus.

¶12. Dr. James O'Donnell, an expert in pharmacology, testified on Valentine's behalf. He stated that there was no appearance of Valentine's being intoxicated based on the reports and body-camera footage of Deputy Ricketts from the hospital that Dr. O'Donnell had reviewed. Dr. O'Donnell opined that the lab report showed 1.2 ng/ml of marijuana in Valentine's system, which is considered to be a very low trace-amount number, not enough to have a clinical effect on Valentine. Additionally, according to Dr. O'Donnell, there was no measurement of the other drugs found in Valentine's system according to the lab report he had reviewed. Dr. O'Donnell testified that based on the drug levels and all the materials he reviewed, Valentine was not under the influence at the time of the crash.

**DISCUSSION**

**I.      Whether the trial court erred by denying a JNOV.**

¶13. Valentine claims the trial court erred by denying his posttrial motion for a JNOV because the State's evidence failed to prove that Valentine was under the influence at the time of the accident. Valentine contends that all of the law-enforcement officers who observed him at the scene of the accident and testified at trial "were unable to testify to any

4

observed indicators that would show that any drugs [had] impact[ed] or lessen[ed] Valentine's ability or control of the motor vehicle." Valentine relies on *Leuer v. City of Flowood*, in which this Court said that "courts have recognized for over half a century that driving 'under the influence' is commonly understood to mean driving in a state of intoxication that lessens a person's normal ability for clarity and control." *Leuer v. City of Flowood*, 744 So. 2d 266, 269 (Miss. 1999) (quoting *Gov't of Virgin Islands v. Steven*, 134 F.3d 526, 528 (3rd Cir. 1998)).

¶14.    Valentine argues that the act of speeding, alone, is not an indicator of being under the influence of anything. Valentine contends that out of the twenty-four "DWI" detection cues issued by the National Highway Traffic Safety Administration (NHTSA), speeding is not one of them. And he contends that the Court of Appeals so held in *Thomas v. Mississippi Department of Public Safety*, 882 So. 2d 789 (Miss. Ct. App. 2004).

¶15.    A JNOV motion challenges the legal sufficiency of the evidence. *Knight v. State*, 72 So. 3d 1056, 1063 (Miss. 2011). In reviewing the trial court's denial of the motion, we view all evidence, including all reasonable inferences, in the light most favorable to the State. *Thomas v. State*, 277 So. 3d 532, 535 (Miss. 2019). We will affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted) (quoting *Cotton v. State*, 144 So. 3d 137, 142 (Miss. 2014)).

¶16.    To prove Valentine guilty of aggravated DUI causing death, the State was required to show that Valentine caused Katie's death by unlawfully operating a motor vehicle in a

negligent manner under Mississippi Code Section 63-11-30(1), (5) (Supp. 2020).  Section

63-11-30(1) states in relevant part:

> (1) It is unlawful for a person to drive or otherwise operate a vehicle within this state if the person:
>
>  . . . .
>
>> (b) Is under the influence of any . . . substance [other than intoxicating liquor] that has impaired the person's ability to operate a motor vehicle; [or]
>>
>> (c) Is under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law . . . .

¶17.    The jury was instructed that in order to find Valentine guilty of aggravated DUI, it must "find beyond a reasonable doubt from the evidence" that when Valentine drove the vehicle in question, he "was under the influence of a drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substance Law" and that "Valentine was negligent in his operation of said vehicle . . . ."  The jury was further instructed that "under the influence" means "driving in a state of intoxication that lessens a person's normal ability for clarity and control."

¶18.    We find that the State presented sufficient evidence to support Valentine's conviction. At the outset, Valentine's reliance on *Thomas* is misplaced.  In that case, the Mississippi Department of Public Safety and one of its highway-patrol officers were sued for not performing a DUI test on a driver who was ticketed for going ninety-two miles per hour in a fifty-five-mile-per-hour zone.  *Thomas*, 882 So. 2d at 791.  Minutes after the driver was ticketed and released, the driver wrecked his vehicle, killing his fifteen-year-old son who was

6

riding as a passenger in the vehicle. *Id.* It was determined that the driver's blood-alcohol concentration (BAC) at the time of the accident was greater than .1825. *Id.* at 790.

¶19. The trial court granted judgment in favor of the defendants. *Id.* The Court of Appeals affirmed, agreeing with the trial court that the officer's failure to check the driver's sobriety at the time he issued the driver a speeding ticket did not rise to the level of reckless disregard required for the plaintiff to recover against the State. *Id.* In so holding, the Court of Appeals noted, *inter alia*, the "*DWI Detection and Standardized Field Sobriety Tests*, which Mississippi highway officers must learn as part of their training." *Id.* at 794. According to the Court of Appeals, the "DWI manual lists twenty characteristics of drivers under the influence; excessive speed is not one of those characteristics." *Id.* at 795.

¶20. That the "DWI manual" referenced in *Thomas* did not list excessive speed as a driver-under-the-influence characteristic is of no moment here. Proof of Valentine's intoxication at the time of the accident was based on more than "mere speeding."

¶21. Evidence shows that Valentine did not just exceed the twenty-mile-per-hour posted speed limit, rather he was driving between seventy and ninety miles per hour in a reckless manner. Witnesses testified that the vehicle was "flying" down Mosely Gap Road when it should have been slowing for the approaching curve. The State's accident reconstructionist testified that Valentine should have seen the curve in the road and did not slow or brake before the wreck. An officer who responded to the crash described Valentine as "irate, constantly yelling," and "acting crazy." And his behavior continued at the hospital, where he had what was described as a "rage episode."

7

¶22. Officer Dolan testified that she smelled the odor of marijuana from inside the vehicle. Valentine admitted that he had smoked marijuana the morning of the wreck, and he tested positive for Delta-9-THC, Topamax, and Xanax. The State's toxicologist testified that Valentine was under the influence of all three drugs when his blood was drawn after the wreck. And she testified that the combination of these drugs would impair Valentine's motor functions and his reaction time.

¶23. In *Irby v. State*, 49 So. 3d 94, 104 (Miss. 2010), this Court affirmed a conviction of DUI maiming under Mississippi Code Section 63-11-30(5) when an expert "testified to significant levels of alprazolam and hydrocodone" in the defendant's blood analysis, both of which, according to the expert, "affect one's ability to operate a motor vehicle." One of the victims in *Irby* also testified that "as she drove over a hill, she saw [the defendant's] truck in her lane driving toward her at an alarming speed." *Id.* The victim swerved left just as the defendant "overcorrected to his right[,]" resulting in a collision. *Id.*

¶24. Based on this evidence, the *Irby* Court held that "it is clear that 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Neal v. State*, 15 So. 3d 388, 409 (Miss. 2009)).

¶25. Similar evidence was presented here from which a rational trier of fact could find that Valentine negligently caused the death of Katie while operating a motor vehicle under the influence of a controlled substance that impaired Valentine's ability to operate the motor vehicle. Accordingly, we find no merit to Valentine's claim that the trial court erred by denying his motion for a JNOV.

**II.** **Whether the trial court erred by denying Valentine's requested jury instruction.**

¶26. Valentine claims the trial court erred by denying the following proposed jury instruction:

Jury Instruction No. D-6

The Court instructs the jury that mere consumption is insufficient to prove that a criminal defendant was driving "under the influence" of an intoxicant. To prove driving under the influence, the State must prove the drug inhibited the person's capacity to operate his vehicle with clarity and control.

¶27. We review the trial court's grant or denial of jury instructions under an abuse-of-discretion standard. *Victory v. State*, 83 So. 3d 370, 373 (Miss. 2012). "A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Id.* (internal quotation marks omitted) (quoting *Newell v. State*, 49 So. 3d 66, 73 (Miss. 2010)).

¶28. The State contends that the trial court did not err by denying Valentine's requested instruction because it was duplicative of another instruction requested by Valentine and granted by the trial court. That instruction explained:

Jury Instruction No. D-5

The definition of "under the influence" is "driving in a state of intoxication that lessens a person's normal ability for clarity and control.

¶29. Valentine contends that this instruction alone was insufficient because the State's toxicologist had stated that having a drug in one's system at all means one is under the

9

influence. Valentines argues that "[m]ere consumption is insufficient because [under the influence] is actually determined by a person's capacity to operate his vehicle with clarity and control."

¶30. We find no error in the trial court's decision not to allow Valentine's proposed jury instruction D-6. Jury Instruction D-5, along with the State's jury instructions providing the elements required to prove aggravated DUI, fairly and accurately informed the jury of the law in this case.

¶31. At the jury-instruction conference, the trial court noted that a similar instruction was refused in *Langdon v. State*, 798 So. 2d 550 (Miss. Ct. App. 2001). There, the defendant was convicted of negligently causing the death of another while driving a motor vehicle under the influence of alcohol. *Id.* at 553. The defendant claimed on appeal that "the trial court committed reversible error in refusing to instruct the jury that the mere act of ingesting alcohol is not, in itself, negligence." *Id.* at 559. The Court of Appeals found no error in the trial court's decision to deny the instruction. *Id.*

> There was no contention by the State and no argument faintly suggesting that the prosecution was urging such a proposition. Aside from being correct statements of the law, instructions must have some relevance to the particular facts of the case being tried and must have the potential to aid the jury in its deliberations. The requested instruction could not have served to assist the jury in its fact-finding and appears to be merely argumentative.

*Id.* (citation omitted).

¶32. Here, similarly, the State's toxicologist did not testify about the mere consumption of drugs found in Valentine's system. Rather, she testified to the effects of each drug on a

10

person once the drugs have been absorbed into a person's system. Contrary to the dissent's contention, we do not find that the State's evidence blurred the distinction between the two.

¶33. We find no merit to this issue.

¶34. Also, while Valentine does not challenge the sufficiency of his indictment, the dissent contends that it was so defective that reversal of his conviction is required. The dissent submits that the indictment fails to inform Valentine adequately of the facts and elements necessary to notify him of the crime charged, thus constituting plain, reversible error. We disagree.

¶35. While the indictment did not identify the impairing or controlled substance(s) that Valentine was alleged to have been under the influence of for purposes of Section 63-11-30(1)(b) or (c), it provided Valentine fair and reasonable notice of the charges against him. Violation of Section 63-11-30 does not depend on the identity of the impairing or controlled substance that lessens a person's normal ability for clarity and control to operate a motor vehicle. Nor do the penalties under Section 63-11-30 depend on the identity of an impairing or controlled substance.

¶36. This Court found similarly in *Warren v. State*, 187 So. 3d 616 (Miss. 2016), for purposes of Mississippi Code 47-5-198(1), which prohibits possession of a controlled substance in a correctional facility. *See* Miss. Code Ann. § 47-5-198(1) (Rev. 2015). There, the indictment did not identify the controlled substance that the defendant had allegedly possessed. *Id.* at 621. The defendant claimed that the identity of the controlled substance

11

was an essential element of the crime and that its omission from the indictment left her unable to prepare a defense. *Id.*

¶37. Rejecting this claim, we found that "neither the crime nor the penalty under Section 47-5-198(1) depends upon the identity of the controlled substance, [thus] an indictment for possession of a controlled substance in a correctional facility need not identify the controlled substance allegedly possessed." *Id.* at 624.

¶38. *Warren* further rejected the argument that the accused's defense was prejudiced by the indictment's failure to specify the controlled substance. Noting former Rule 9.04(A) of the Uniform Rule of Circuit and County Court Practice, governing mandatory discovery, *Warren* found that the accused "admitted that the State had provided her with the crime lab's test results in discovery." *Id.* at 625.

¶39. We find the same here. Similar to the statute at issue in *Warren*, neither the crime nor the penalty under Section 63-11-30 depends on the identity of the impairing or controlled substance under Section 63-11-30(1)(b) and/or (c). Identity of the impairing or controlled substance is not an essential element of the offense. And the indictment adequately informed Valentine of the charge against him by citing the relevant statute he was accused of violating.

¶40. We also find the same with the indictment's charge of aggravated DUI. Though the indictment did not specify the type of bodily injury the victim allegedly suffered, the indictment references Section 63-11-30(5), which describes the type of injuries contemplated for aggravated DUI. Accordingly, we find that the indictment adequately informed Valentine of the aggravated DUI charge against him.

12

¶41. Further, even though Valentine does not make the claim, we point out to the dissent that the record clearly demonstrates that Valentine was provided a copy of the toxicology report during discovery, which reported the presence of marijuana, Topamax, and Xanax in his bloodstream. Thus, as in *Warren*, we reject the notion that Valentine's defense was prejudiced by the failure to specify these substances in the indictment.

¶42. Lastly, we agree with the dissent that State's witnesses erroneously referred to Topamax (also known as Topiramate) as a controlled substance under Mississippi law. We do not see this drug, or any of its components, listed under any of the schedules provided by Mississippi Code Sections 41-29-113 to -119 (Rev. 2018).

¶43. Valentine did not raise this error in the trial court, nor does he argue it on appeal. Nevertheless, we find that the error constitutes no more than harmless error in this instance.

¶44. Again, Valentine was charged with operating a motor vehicle in violation of Section 63-11-30(1)(b) and/or (c). Subpart (b) makes unlawful a person's operating a vehicle "under the influence of any . . . substance [other than intoxicating liquor] that has impaired the person's ability to operate a motor vehicle[,]" while subpart (c) makes operating a vehicle unlawful if the person "[i]s under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substance Law[.]" Miss. Code Ann. § 63-11-30(1)(b) and (c).

¶45. As the dissent rightly points out, even though the State charged Valentine under both provisions (b) and (c), the State elected to proceed at trial solely under provision (c), and the

jury was instructed accordingly.[1]  As mentioned, two of the State's witnesses stated during the State's case-in-chief that all the drugs found in Valentine's system are considered controlled substances under Mississippi law.  Having reviewed the provisions under Mississippi's Controlled Substances Law, we find that while the drugs marijuana and Xanax are classified as controlled substances, the drug Topamax, as mentioned, is not classified

---

[1] The following jury was instructed was submitted to the jury:

**JURY INSTRUCTION NO. S-1**

Curtis Lee Valentine is charged with driving or operating a vehicle while under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law, and negligently causing bodily injury to another person.

If you find beyond a reasonable doubt from the evidence of this case that:

1) On or about November 22, 2016, in Warren County, Mississippi;

2) Curtis Lee Valentine drove a Nissan Altima automobile; and

3) When Curtis Lee Valentine drove the Nissan Altima automobile, Curtis Lee Valentine was under the influence of a drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law.

4) While Curtis Lee Valentine was driving the Nissan Altima automobile, Curtis Lee Valentine was negligent in his operation of said vehicle; and

5) Katherine Nicole Martin, a human being was injured or killed as a result of Curtis Lee Valentine's negligence,

Then and in that event, the defendant, Curtis Lee Valentine, is guilty of DUI - Aggravated Controlled Substances and it is your sworn duty to so find.

The Court further instructs the Jury that if the State fails to prove any of the above elements, beyond a reasonable doubt, then in that event you must find the defendant, Curtis Lee Valentine, not guilty of DUI - Aggravated Controlled Substances.

14

under any of the listed schedules.[2]  Thus, Section 63-11-30(1)(b) would apply for that substance, not Section 63-11-30(1)(c).

¶46.    Subpart (b) is different from subpart (c) in that subpart (b) contains the language, "has impaired the person's ability to operate a motor vehicle."  Neither subpart (c), nor subpart (a) for that matter, contain the term "impairment."[3]

¶47.    While this Court has never explicitly held so, arguments have been presented in the past suggesting that, by use of the term impairment, subpart (b) contains a requirement that neither subparts (a) or (c) contain and thus requires greater proof to sustain a conviction.  We find that this is an incorrect interpretation of 63-11-30(1).

¶48.    First, we reiterate what this Court explained in *Young v. City of Brookhaven*, 693 So. 2d 1355 (Miss. 1997).  There, it was argued that because the State had charged and prosecuted the defendant under two separate provisions under Section 63-11-30(1), common-law DUI and the defendant's blood-alcohol results,[4] this constituted separate crimes that had to be defended in different ways. *Young*, 693 So. 2d at 1357.  Rejecting this argument, *Young* noted similar statutes in other jurisdictions and said that the two different subsections

---

[2] Marijuana is classified as Schedule 1 Controlled Substance, and Xanax is classified as a Schedule 4 Controlled Substance. *See* Miss. Code Ann. §§ 41-29-113(c)(31), -119 (b)(2) (Rev. 2018).

[3] Section 63-11-30(1)(a)(Supp. 2020) makes unlawful a person's operating a vehicle if the person "[i]s under the influence of intoxicating liquor."

[4] "Section 63-11-30(1)(a) is commonly referred to as 'common law DUI.'" *Gilpatrick v. State*, 991 So. 2d 130, 133 (Miss. 2008).  Mississippi Code Section 63-11-30(1)(d) (Supp. 2020) provides blood-alcohol limits.  At the time *Young* was decided, Mississippi Code Section 63-11-30(1)(c) (Rev. 2004) provided blood-alcohol limits.

do not prescribe separate offenses.  *Id.* at 1358 (citing *Johnston v. City of Fort Smith*, 690 S.W.2d 358, 359 (Ark. Ct. App. 1985).  *Buckner v. City of Huntsville*, 549 So. 2d 451, 452 (Ala. 1989)).  *Young* held that "[Section] 63-11-30 merely sets forth numerous methods of committing the same crime."  *Young*, 693 So. 2d at 1358.

¶49.　Later, in speaking to common-law DUI under subsection (a), this Court explained: "Common law DUI is proven when a defendant's blood alcohol results are unavailable or the defendants BAC tests under the limit, but there is *sufficient evidence* that the defendant operated a vehicle under circumstances indicating his ability to operate the vehicle was *impaired* by the consumption of alcohol."  *Gilpatrick*, 991 So. 2d at 133 (second emphasis added) (citing *Leuer*, 744 So. 2d at 268)).

¶50.　The term "impaired" does not carry with it a specific definition.  Indeed, some jurisdictions consider impaired driving to be a lesser-included offense to driving under the influence.  *See, e.g.*, *Bernhardt v. State*, 719 P.2d 832, 833 (Okla. Crim. App. 1986) ("the crime of Driving While Impaired is a lesser included offense to Driving Under the Influence"); *People v. Leonowicz*, 350 N.W.2d 770, 772 (Mich. Ct. App. 1984) (same).

¶51.　But Kentucky, for example, which has a provision almost identical to Section 63-11-30(1)(c), does not.  Under Kentucky's Revised Statutes Annotated § 189A.010(1)(c), it is unlawful for a person to operate a motor vehicle "[w]hile under the influence of any other substance or combination of substances which impairs one's driving ability[.]"  Ky. Rev. Stat. Ann. § 189A.010(1)(c) (West, Westlaw through 2021 Reg. Sess.).

16

¶52.    In speaking to the use of the term impairment contained in the statute, the Kentucky Supreme Court has explained as follows:

> The statute means to prevent the evil effects of substandard driving resulting from the operation of motor vehicles by persons under the influence of alcohol. We take as legislative facts that: 1) alcohol (or other substances) *may* impair driving ability; and 2) a driver actually *under the influence* of such substances is impaired as a driver, conclusively, and presents a danger to the public. Proof that a driver was "under the influence" is proof of impaired driving ability. It is redundant to instruct on impairment as a separate element, and confusing to instruct that the Commonwealth must prove influence but not impaired ability.

*Bridges v. Commonwealth*, 845 S.W.2d 541, 542 (Ky. 1993).

¶53.    We point out that at the time *Bridges* was decided, the controlling statute read, "No person shall operate a motor vehicle anywhere in this state while under the influence of alcohol or any other substance which may impair one's driving ability." *Bridges*, 845 S.W.2d at 541 (quoting Ky. Rev. Stat. Ann. § 189A.010(1)). Since *Bridges*, the statute has been amended to that as provided by Section 189A.010(1)(c), as quoted above. The Kentucky Supreme Court reiterated *Bridges*'s holding for purposes of current Section 189A.010(1)(c) in *Carroll v. Commonwealth*, No. 2007-SC-000613-TG, 2009 WL 160450, *2 (Ky. Jan. 22, 2009), an unpublished opinion.

¶54.    We interpret Section 63-11-30 in the same manner. Proof that a driver was under the influence, as defined by this Court in *Leuer*, is proof of impaired driving ability for purposes of subsection (b) of the statute. The same holds true for subsections (a) and (c). *See Gilpatrick*, 991 So. 2d at 133 (holding so for common law DUI under subsection (a)). Notwithstanding any past belief by the bench and the bar to the contrary, subsection (b) does

17

not require an extra element of proof or provide a heightened standard for demonstrating a violation of Section 63-11-30.

¶55.   Here, while the drug Topamax was misidentified as a controlled substance at trial, we do not find that the error resulted in a fundamentally unfair trial for Valentine.  Even though the drug is not considered a controlled substance, evidence was presented both by the State and the defense's own expert that the drug affects the central nervous system.  Baily testified that it can affect judgment, motor function, and coordination.  And Dr. O'Donnell testified that too much of the drug "can cause confusion, . . . slurred speech, [and] a general slowing [of the] person."  When combined with the two other drugs contained in Valentine's system, which are considered controlled substances, there is a compounding effect on the central nervous system.

¶56.   Given the evidence presented, we are confident that the jury would have reached the same result if Topamax had not been misidentified as a controlled substance or if the jury had been instructed with regard to subsection (b) rather than just subsection (c).  Thus, we find the error harmless beyond a reasonable doubt.

## CONCLUSION

¶57.   Valentine's conviction for aggravated DUI is affirmed.

¶58.   **AFFIRMED.**

**RANDOLPH, C.J., COLEMAN, MAXWELL, CHAMBERLIN AND GRIFFIS, JJ., CONCUR.   KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., AND ISHEE, J.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

18

¶59. Respectfully, I dissent. Conducting a plain error review of Valentine's indictment, I find that the indictment was insufficient to charge him with a crime. Notwithstanding the defective indictment, the State failed to provide sufficient evidence that Valentine's ability for clarity and control had been affected adversely by drugs, which is a necessary component of "under the influence," an element of the offense with which the State attempted to charge Valentine. Additionally, the trial court should have granted Valentine's proposed Jury Instruction D-6 because it was needed to inform the jury adequately of all essential elements of driving under the influence, especially in the wake of the misleading testimony of the State's expert about the meaning of "under the influence." Because Valentine's indictment was defective and because the State failed to provide sufficient evidence that Valentine was "under the influence," I would reverse Valentine's conviction and render a judgment in his favor.

**A)**     **Under plain error review, Valentine's indictment was so defective that reversal of his conviction is required.**

¶60. Although Valentine has not argued that his indictment is defective, this Court "may, at its option, notice a plain error not identified or distinctly specified." M.R.A.P. 28(a)(3). "A review under the plain error doctrine is necessary when a party's fundamental rights are affected, and the error results in a manifest miscarriage of justice." ***Johnson v. State***, 235 So. 3d 1404, 1414 (Miss. 2017) (internal quotation marks omitted) (quoting ***McGee v. State***, 953 So. 2d 211, 215 (Miss. 2007)). "Further, '[u]nder the plain-error doctrine, we can recognize obvious error which was not properly raised by the defendant on appeal, and which affects

19

a defendant's fundamental, substantive right.'" ***Id.*** (alteration in original) (quoting ***Smith v. State***, 986 So. 2d 290, 294 (Miss. 2008)).

¶61.    "The government may not prosecute a criminal defendant 'for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . . .'" ***Quang Thanh Tran v. State***, 962 So. 2d 1237, 1241 (Miss. 2007) (quoting U.S. Const. amend. V). "The familiar constitutional right to notice of criminal charges is guarded by both the state and federal bill of rights." ***Thomas v. State***, 126 So. 3d 877, 879 (Miss. 2013) (citing U.S. Const. amend. VI; Miss. Const. art 3, § 26). This Court has recognized that "[t]he purpose of an indictment is to satisfy the constitutional requirement that a 'defendant be informed of the nature and cause of the accusation . . . .'" ***Quang Thanh Tran***, 962 So. 2d at 1241 (second alteration in original) (quoting U.S. Const. amend. VI; Miss. Const. art 3, § 26). This Court has said that "[t]he purpose of these requirements is to ensure that criminal defendants have a fair and adequate opportunity to prepare for and defend against the charges brought against them by the government." ***Id.*** Additionally, this Court has said that "[t]he purpose of the indictment is to serve notice of the charges against the defendant and the facts underlying such charges." ***Culp v. State***, 933 So. 2d 264, 277 (Miss. 2005) (citing ***Westmoreland v. State***, 246 So. 2d 487, 490 (Miss. 1971)).

¶62.    The indictment "does not require a citation to the specific statute, but merely enough facts so that the defendant is put on notice as to the statute that is alleged to have been violated." ***Id.*** (citing ***Westmoreland***, 246 So. 2d at 492). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of

20

themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Quang Thanh Tran*, 962 So. 2d at 1241 (quoting *United States v. Carll*, 105 U.S. 611, 612, 26 L. Ed. 1135 (1881)). Simply put, "[a]n indictment must contain (1) the essential elements of the crime charged, (2) sufficient facts to fairly inform the defendant of the charge which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense."[5] *Hardy v. State*, 137 So. 3d 289, 301 (Miss. 2014) (internal quotation marks omitted) (quoting *Young v. State*, 119 So. 3d 309, 313 (Miss. 2013)).

¶63.    "[S]imply tracking the language of a statute will not always be sufficient."[6] *Quang Thanh Tran*, 962 So. 2d at 1242. This Court has said that "the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Id.* at 1241-42 (internal quotation marks omitted) (quoting *United States v. Hess*, 124 U.S. 483, 487, 8 S. Ct. 571, 31 L. Ed. 516 (1888)). This Court also has said that "whether an indictment in the language of the statute is sufficient, or whether other words or acts are necessary to properly charge

---

[5]Valentine was indicted prior to the effective date of the Mississippi Rules of Criminal Procedure, which is the controlling authority for indictments on and after July 1, 2017.

[6]For example, "this Court has clearly and consistently held that an indictment which simply follows the language of Mississippi's burglary statute is insufficient." *Quang Thanh Tran*, 962 So. 2d at 1242.

21

the commission of a crime is dependent upon the nature of the offense and the terms in which it is described by the statute." *Id.* at 1242 (internal quotation marks omitted) (quoting *Jones v. State*, 856 So. 2d 285, 289 (Miss. 2003)). "[T]he ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense." *Medina v. State*, 688 So. 2d 727, 730 (Miss. 1996) (citing *Allman v. State*, 571 So. 2d 244 (Miss. 1990)).

¶64. Valentine's indictment is entitled, "DUI-AGGRAVATED CONTROLLED SUBSTANCES."[7] The grossly inadequate charging language alleges that Valentine

> [O]n or about November 22, 2016, in the County aforesaid, and within the jurisdiction of this Court did willfully, unlawfully and feloniously drive or otherwise operate a motor vehicle in violation of Section 63-11-30(1)(b) and/or (c), Miss. Code 1972, as amended, and in a negligent manner caused bodily injury Katherine Nicole Martin, as described in and in violation of Section 63-11-30(5), Miss. Code 1972, as amended, and against the peace and dignity of the State of Mississippi.

Here, the erroneous omissions were substantive and not merely of form. The indictment is defective because it fails to inform Valentine adequately of the facts and elements necessary to notify him of the offense charged.[8] Most notably, there is no allegation that Valentine had

---

[7]This title is mere surplusage. It is not part of the charging portion of the indictment.

[8]Valentine's indictment was defective also because it lacked the grand jury foreman's signature, as required statutorily by Mississippi Code Section 99-7-9, which provides that "[a]ll indictments . . . must be presented to the clerk of the circuit court by the foreman of the grand jury . . . with the foreman's name endorsed thereon, accompanied by his affidavit that all indictments were concurred in by twelve (12) or more members of the jury and that at least fifteen (15) were present during all deliberations[.]" Miss. Code Ann. § 99-7-9 (Rev. 2020). Although the foreperson apparently did sign an affidavit required by Section 99-7-9, that document is different from the indictment and is not part of it. This Court has held that "if the statutory requirements of section 99-7-9 (and its predecessors) are not met, it is proper to demur to such an indictment and the demurrer should be sustained." *Jones v. State*, 356

driven a motor vehicle while under the influence of alcohol or any other intoxicating drug. Valentine's indictment informed him only that he had been accused of driving a motor vehicle in violation of Sections 63-11-30(1)(b) and/or (1)(c) and that somehow he negligently caused an injury somewhere on the victim's body[9] in violation of Section 63-11-30(5).

¶65.    The majority finds that the indictment "provided Valentine fair and reasonable notice of the charges against him." Maj. Op. ¶ 35. While the indictment did note the statutes under which the State wished to proceed, it failed to provide "a statement of the facts and circumstances [that would have] inform[ed] [Valentine] of the specific offence . . . with which he [was] charged." *Quang Thanh Tran*, 962 So. 2d at 1242 (internal quotation mark omitted) (quoting *Hess*, 124 U.S. at 483). Without more, Valentine was not placed on notice that the State would adduce evidence that accused him of driving under the influence of marijuana, Topamax, and Xanax and that his speeding negligently had caused the death of the victim. Valentine's indictment did not provide "enough facts so that [he] [was] put on notice as to the statute that [was] alleged to have been violated[,]" and it was left up to

So. 2d 1182, 1183 (Miss. 1978) (citing *Stanford v. State*, 76 Miss. 257, 24 So. 536 (1899) (Miss. Code (1892) § 1346)). But we have held also that "an objection that a foreman of a grand jury did not endorse the indictment could not be raised for the first time on appeal." *Id.* (citing *Pruitt v. State*, 163 Miss. 47, 139 So. 861 (1932)). Additionally, this Court has found this issue to be "a procedural defect which must be raised by special demurrer to the indictment or it is waived." *Id*; *see also Perkins v. State*, 487 So. 2d 791, 792 (Miss. 1986) ("We note that issues such as these respecting the indictment are essentially procedural and susceptible of waiver if not timely preserved and presented on direct appeal." (citing Miss. Code Ann. § 99-39-21(1) (Supp. 1985))). Because Valentine's counsel failed to make a proper and timely objection, this issue has been waived and cannot serve as a basis for reversal.

[9]The State's proof at trial established that Katherine Nicole Martin was killed in the crash, but that important detail is not mentioned in the indictment.

23

Valentine to figure out what crime and theory the State intended to pursue. ***Culp***, 933 So. 2d at 277 (citing ***Westmoreland***, 246 So. 2d at 490). The statute cited in the indictment contains numerous scenarios and a multitude of injuries, including death, that can constitute indictable crimes. Valentine was entitled to be informed precisely which of those possible scenarios he was being accused of. In that regard, the indictment was a dismal failure.

¶66.    A specific set of facts was especially essential in this case because of the numerous factual and legal theories the State could have employed under the statute cited. First, Section 63-11-30(1)(b) allows for prosecution of a person who has driven under the influence of "any other substance that impaired the person's ability to operate a motor vehicle[.]" Miss. Code Ann. § 63-11-30(1)(b) (Supp. 2020). The phrase "any other[10] substance" is very broad and does not provide a defendant notice of which intoxicating substance he or she is accused of being under the influence of. Second, Section 63-11-30(1)(c) allows for prosecution when a person has driven under the influence of "any drug or controlled substance, . . . which is unlawful under the Mississippi Controlled Substances Law[.]" Miss. Code Ann. § 63-11-30(1)(c) (Supp. 2020). Hundreds of drugs and substances are prohibited under our state's controlled substance law, and a mere citation of that enormous body of statutory law does not provide notice of which drug(s) the State charges that Valentine was under the influence of. *See* Miss. Code Ann. §§ 41-29-113 to -119 (Rev. 2018). Third, Section 63-11-30(5)(a) prohibits a driver's negligently causing "the death of another[.]" Miss. Code Ann. § 63-11-30(5)(a) (Supp. 2020). It also subjects to prosecution one who "mutilates, disfigures,

---

[10]Here the word *other*, in the context of Mississippi Code Section 63-11-30(1)(b), means other than alcohol.

24

permanently disables or destroys the tongue, eye, lip, nose or any other limb, organ or member of another[.]" *Id.* This section prescribes five different ways for a negligent, intoxicated driver to injure another, *i.e.*, death, mutilation, disfigurement, permanent disablement, and permanent destruction, and numerous body placements for the injury to occur, *i.e.*, a person's tongue, eye, lip, nose, other limb, organ, or member. The indictment provided Valentine no notice of whether the State was alleging that he had destroyed the victim's eye, disfigured her finger, or killed her. It was impossible for Valentine to be on notice of which theory under Section 63-11-30(5)(a) the State intended to prosecute him. For these reasons, the indictment is insufficient because it failed to "put [Valentine] on notice as to the statute that [was] alleged to have been violated." *Culp*, 933 So. 2d at 277 (citing *Westmoreland*, 246 So. 2d at 492).

¶67.    The majority finds also that the indictment is sufficient because neither the crime nor the penalty under Section 63-11-30(1)(b)-(c) is dependent upon the identity of the impairing or controlled substance. Maj. Op. ¶ 35 ("Violation of Section 63-11-30 does not depend on the identity of the impairing or controlled substance that lessens a person's normal ability for clarity and control to operate a motor vehicle."). The majority finds also that "the same" is true for Section 63-11-30(5). Maj. Op. ¶ 40. In reaching its decision, the majority relies on *Warren v. State*, 187 So. 3d 616 (Miss. 2016). In *Warren*, this Court found:

> Section 47-5-198(1) makes no distinctions based on the type of controlled substance allegedly possessed in a correctional facility. . . . Neither the crime nor the penalty depends upon the type of controlled substance possessed; rather, the statute criminalizes possession of "any controlled substance" in a correctional facility. . . . Because neither the crime nor the penalty under Section 47-5-198(1) depends upon the identity of the controlled substance, an

25

> indictment for possession of a controlled substance in a correctional facility need not identify the controlled substance allegedly possessed. The identity of the controlled substance under Section 47-5-198(1) is not an essential element of the crime.
>
> . . . .
>
> [T]he identity of the controlled substance under Section 41-5-198(1) is not an essential element of the crime, and the fact that Warren's indictment did not identify the controlled substance was not prejudicial to her defense.

*Warren*, 187 So. 3d at 623-24. But *Warren* is distinguishable from Valentine's case. The applicable statute in *Warren* was Mississippi Code Section 41-5-198(1) (Rev. 2015), not Section 63-11-30. The Court in *Warren* reasoned that the identity of the controlled substance was not an essential element of the crime because Section 41-5-198(1) allowed prosecution for "any controlled substance." *Id.* at 624. But Section 63-11-30(c) mandates that the drug or controlled substance that was consumed be a prohibited substance under the Mississippi Controlled Substances Law. Miss. Code Ann. § 63-11-30(1)(c). Unlike Section 41-5-198(1), the identity of the controlled substance is an essential element under Section 63-11-30(c) because if the substance is not a prohibited controlled substance then the statute is not satisfied and no crime has been committed.

¶68. This Court's holding in *Brewer v. State*, 351 So. 2d 535 (Miss. 1977), contradicts the majority's conclusions. In *Brewer*, the defendant was indicted for delivering a controlled substance, "to-wit: *preludin* . . . ." *Id.* at 536. "At the conclusion of the state's case, the defendant made a motion to dismiss on the ground that no cause of action was stated by the indictment since it did not charge him with delivery of a substance which was on the statutory schedule." *Id.* But "evidence adduced at trial showed that preludin contained

26

phenmetrazine, a substance listed in Schedule II of the Schedules of Controlled Substances."

*Id.* (citing Miss. Code Ann. § 41-29-115 (Supp. 1976)). The trial court overruled the

defendant's motion and allowed the State to amend[11] the indictment to state that "preludin

contained phenmetrazine[,]" a controlled substance prohibited by law. *Id.* This Court

determined that

> It is clear that in order for the indictment to allege a violation of law that the
> state had to show by extrinsic evidence that preludin was a substance which
> contained phenmetrazine. Therefore, an essential ingredient of the indictment
> was omitted and the indictment was invalid. Under these circumstances the
> indictment could not be amended. *See* **Wortham v. State**, 219 So. 2d 923
> (Miss. 1969).
>
> . . . .
>
> [I]t was necessary for the state to prove extrinsic facts, *i.e.*, that preludin
> contained phenmetrazine, in order to make out a *prima facie* case since
> preludin itself is not designated as a controlled substance.

*Id.* at 536-37. Quoting *Love v. State*, 211 Miss. 606, 52 So. 2d 470 (1951), the Court

recognized the importance that "[e]very material fact and essential ingredient of the

offense—every element of the offense—must be alleged with precision and certainty, or, as

has been stated, every fact which is an element in a prima facie case of guilt must be stated

in the indictment." *Id.* at 536 (internal quotation marks omitted) (quoting *Love*, 52 So. 2d at

472). "The omission of a recital in the indictment that preludin contained phenmetrazine was

an omission of substance; and, it was an omission which went to the very heart of the

_____

[11]Although **Brewer** dealt with amending an indictment, its application also is useful
in the determination of whether an indictment is substantively defective and thereby void
because a substantive defect, *i.e.*, failure to include an essential element of the crime, cannot
be cured by an amendment to the indictment.

indictment." *Id.* at 536. The Court noted also that "a comparison of the indictment to the criminal statute would not disclose that a crime was charged." *Id.* at 537.

¶69.    In Valentine's case, the indictment failed to allege that Valentine was "under the influence" and failed to identify the prohibited controlled substances, which are undoubtedly essential elements because in order for a crime to occur the accused person's normal ability for clarity and control had to have been lessened by a prohibited controlled substance.

¶70.    Comparing the indictment to the code section cited in the indictment, Section 63-11-30(1)(c), the indictment did not include the words "drugs" or "controlled substances." Rather, the indictment merely stated that Valentine drove or operated a motor vehicle "in violation of Section 63-11-30(1)(b) and/or (c)[.]" A mere citation of the applicable statute is insufficient in this case because without identification of the controlled substances, Valentine was not informed whether the drugs the State claims to have been ingested by him indeed are prohibited controlled substances under Mississippi law. Without pleading that Valentine was under the influence and identifying the controlled substance(s) at issue, "essential ingredient[s] of the indictment [were] omitted and the indictment [is] invalid." *Id.* at 536

¶71.    Valentine's case is analogous to *Thomas*, 126 So. 3d 877. In *Thomas*, the defendant was indicted for being a felon in possession of a prohibited weapon, *i.e.*, a knife, pursuant to Mississippi Code Section 97-37-5 (Rev. 2006). *Thomas*, 126 So. 3d at 878-79. The Court held that the indictment was defective and void because it failed to "charge Thomas with an essential element of the crime[.]" *Id.* at 880. The Court found:

> Thomas's indictment informed him only that he was accused of possessing a knife at a time when he was a convicted felon. Notwithstanding the vast

28

varieties of knives he could have possessed with impunity, the indictment failed to specify which, if any, of the four types of prohibited knives he was alleged to have possessed. The type of weapon a felon is alleged to have possessed is unquestionably an essential and material element of the crime of being a felon in possession of a prohibited weapon.

*Id.* at 879-80. Valentine's indictment "failed to specify which, if any, of the [numerous] types of prohibited [controlled substances] he was alleged to have [been under the influence]" of. *Id.* at 879. Similarly, the crime in Section 63-11-30(1)(c) depends on the indictee's being under the influence of some controlled substance. Based on ***Brewer*** and ***Thomas***, the indictment in this case should have specified the particular controlled substance(s) the State contended had impaired Valentine's ability to drive. The identity of the drugs is an essential element of the crime the State was trying to charge.

¶72. The majority is mistaken in its conclusion that the toxicology report obtained through discovery cured any prejudice suffered by Valentine and his defense. The majority's reliance on ***Warren*** is misplaced. First, the Court in ***Warren*** mainly rejected the defendant's prejudice argument because "[a]s we have held, the identity of the controlled substance under Section 41-5-198(1) is not an essential element of the crime, and the fact that Warren's indictment did not identify the controlled substance was not prejudicial to her defense." ***Warren***, 187 So. 3d at 624. After making this determination the Court went on to "observe that the identity of the controlled substance [was] subject to mandatory discovery under Uniform Rule of Circuit and County Court Practice 9.04(A)." *Id.* at 624-25. ***Warren*** did not state explicitly that discovery had cured a defective indictment.

29

¶73. Second, **Warren** overlooked **Brewer**'s holding "that a substantive defect in an indictment cannot be cured by extrinsic proof[.]" **Copeland v. State**, 423 So. 2d 1333, 1336 (Miss. 1982). Under **Brewer**, the later discovery of an essential element of the crime does not cure a substantively insufficient indictment because the indictment had failed to charge a crime in the first place. **Brewer**, 351 So. 2d at 536 ("[A]n essential ingredient of the indictment was omitted and the indictment was invalid. Under these circumstances the indictment could not be amended."); *see also* **Copeland**, 423 So. 2d at 1337 ("[W]e hold that the indictment failed to charge a crime and is therefore void."). If we allow evidence discovered after an indictment has been formed and served on a defendant to cure any prejudicial effect it had created, we defeat the constitutional protection afforded an individual to "ensure that criminal defendants have a fair and adequate opportunity to prepare for and defend against the charges brought against them by the government." **Quang Thanh Tran**, 962 So. 2d at 1241. If the Court's intention in **Warren** had been to overrule **Brewer** by allowing extrinsic proof to cure substantively defective indictments, then the Court should have done so explicitly. To the contrary, this Court never has taken that radical step.

¶74. The indictment failed to (1) allege that Valentine was driving under the influence of intoxicants, (2) name the substance(s) that had rendered him under the influence, (3) state how Valentine's driving was negligent, and (4) identify the type of injury the victim had sustained in the crash, all of which are essential facts and elements for putting Valentine on notice of the charge against him. "[T]his Court [has] recognized that an indictment which fails to allege the particulars of the underlying crime should be quashed." **Quang Thanh**

30

***Tran***, 962 So. 2d at 1242 (citing ***State v. Buchanan***, 75 Miss. 349, 22 So. 875 (1898)). Additionally, "[a]n indictment which fails to allege all essential elements of a crime runs afoul of our constitutions and is void." ***Thomas***, 126 So. 3d at 879. "This failure to charge [Valentine] with a crime cognizable under Mississippi law is a plain, constitutional error and requires dismissal of the indictment and reversal of the conviction[.]" ***Id.*** at 880.

### B)     Under the Influence

¶75.    I agree with both arguments that Valentine presents to this Court. First, he contends the trial court erred by denying his motion for judgment notwithstanding the verdict (JNOV) because the State failed to prove that he was "under the influence." To address this argument, an analysis of the phrase "under the influence" is necessary. At the outset I reiterate that the words "under the influence" do not appear in Valentine's indictment.

¶76.    Both Section 63-11-30(1)(b) and Section 63-11-30(1)(c) require that the accused be "under the influence." *See* Miss. Code Ann. § 63-11-30(1)(b); Miss. Code Ann. § 63-11-30(1)(c). This Court has held that "'under the influence' is commonly understood to mean driving in a state of intoxication that lessens a person's normal ability for clarity and control." ***Leuer v. City of Flowood***, 744 So. 2d 266, 269 (Miss. 1999) (quoting ***Gov't of Virgin Islands v. Steven***, 134 F.3d 526, 528 (3d Cir. 1998)). We have recognized also that "[t]his common understanding is consistent with the obvious purpose of drunk driving statutes; i.e., to prevent people from driving unsafely due to an alcohol-induced diminished capacity." ***Id.*** (internal quotation mark omitted) (quoting ***Steven***, 134 F.3d at 528).

31

¶77. In order for a trier of fact to find that a person is "under the influence," the State must prove beyond a reasonable doubt that the accused consumed an intoxicating substance and that the substance adversely affected the person's normal ability for clarity and control. Any argument or finding that consumption of an intoxicating substance alone is sufficient to constitute "under the influence" would not comport with this Court's holding in **Leuer** that the intoxicating substance must "lessen[] [the] person's normal ability for clarity and control." **Leuer**, 744 So. 2d at 269 (quoting **Steven**, 134 F.3d at 528). Thus, "under the influence" requires more than mere consumption of an intoxicating substance. In this case, the State was required to prove (1) that Valentine was driving a motor vehicle in the State of Mississippi, (2) that he consumed an intoxicating substance, (3) that the substance lessened Valentine's normal ability for clarity and control, and (4) that Valentine negligently caused the death of another.

### C) The trial court erred by denying Valentine's motion for judgment notwithstanding the verdict.

¶78. "This Court applies a de novo standard of review to a trial court's denial of a judgment notwithstanding the verdict." **Daniels v. State**, 107 So. 3d 961, 963 (Miss. 2013) (citing **Johnson v. St. Dominics-Jackson Mem'l Hosp.**, 967 So. 2d 20, 22 (Miss. 2007)). "A motion for JNOV is a challenge to the legal sufficiency of the evidence, and this Court will affirm the denial of a motion for JNOV if there is substantial evidence to support the verdict." **Id.** (citing **Johnson**, 967 So. 2d at 22). This Court has held that "[i]n reviewing a challenge to the sufficiency of the evidence, the critical inquiry is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt.'" ***Parish v. State***, 176 So. 3d 781, 785 (Miss. 2015) (quoting ***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005), *abrogated on other grounds by **Little v. State***, 233 So. 3d 288 (Miss. 2017)).

¶79.    Valentine argues that the State failed to provide any evidence that his ability and control of the vehicle were affected adversely or lessened by the drugs he had consumed. Specifically, "Valentine contends that all of the law enforcement officers who observed him at the scene of the accident and testified at trial 'were unable to testify to any observed indicators that would show that any drugs [had] impact[ed] or lessen[ed] Valentine's ability or control of the motor vehicle.'" Maj. Op. ¶ 13 (alterations in original). The State relied on testimony from several witnesses regarding Valentine's speeding prior to the crash and his behavior afterward. Again, in order to prove that Valentine was "under the influence," the State was required to produce evidence that (1) had Valentine consumed the intoxicating drugs and (2) that he was driving in a state of intoxication by which his ability for clarity and control was diminished. *See **Leuer***, 744 So. 2d at 269.

¶80.    Warren County Sheriff's Deputies Ronnie Fuller and Jonathan Hearn testified about Valentine's behavior after the car crash. Deputy Fuller testified that when he arrived at the crash scene, he observed Valentine "steady trying to get back into the vehicle[]" and that Valentine repeatedly told the officers that "there [was] someone in the vehicle." He also described Valentine as behaving "very, very, hysterical, acting crazy and everything." Deputy Hearn described Valentine as acting "irate" at the crash scene. But both deputies acknowledged that Valentine ultimately did calm down at the crash scene once the officers

had placed him in a patrol car. Deputy Fuller testified also that while at the hospital, Valentine was "a little agitated[,]" kept inquiring about the victim's condition, and that upon learning of the victim's death, Valentine "went ballistic[.]"[12]

¶81.    An in-house accident reconstructionist for the Warren County Sheriff's Department, Connie Dolan, testified that when she examined the car after the wreck, she detected the odor of marijuana emanating from the vehicle. But she testified also that during her interactions with Valentine, she did not observe any signs that suggested that Valentine was under the influence of anything.

¶82.    The third occupant of the car, Khalil Brown, testified that he believed Valentine was traveling between seventy to ninety miles per hour prior to the crash. On cross-examination, Brown testified repeatedly that he did not think that Valentine was under the influence of anything.[13]

¶83.    The State called Alyssa Bailey from the Mississippi Forensics Laboratory as an expert in the field of forensic toxicology to testify regarding blood analysis, which revealed that Valentine had consumed marijuana, Topamax, and Xanax at some time prior to the accident.

---

[12]Deputy Fuller's use of the term "ballistic" was not in the literal sense of the term because ballistic is defined as "[o]f or pertaining to projectiles, their motion, or their effects." *Ballistic*, The American Heritage Dictionary of the English Language (1981). But Deputy Fuller did describe Valentine's "ballistic" behavior as meaning "yelling, screaming, . . . throwing his arms and his feet, jumping around the room and everything else."

[13]But on redirect examination, after repeated inquiries by the State, Brown eventually agreed it was possible for Valentine to have been under the influence while speeding down the road.

In addition, Bailey gave opinion testimony[14] regarding the effects those drugs would have on a person. When asked by the State whether she could give an opinion about whether Valentine was "under the influence" of the drugs, Bailey responded:

> Yes. *The mere presence* of these different drugs in the blood, it is indicative that he was under the influence *at the time that the blood was drawn.*

(Emphasis added.) Then on cross-examination, the following exchange occurred:

| | |
|---|---|
| Defense Counsel: | So your testimony is, basically, if it's in your body, then you're under the influence. Now, the legal definition says it has to lessen a person's normal ability for clarity and control. And that's not the standard that you're telling them; correct? |
| Bailey: | The definition of "under the influence," *as far as I'm concerned* in the profession of toxicology is, again, a mere presence of a substance, means that person is under the influence of that substance. But again to what extent, is determined by the level of the drug, or like you were saying the effects it was having on the person. |

(Emphasis added.) Bailey repeatedly expressed her belief that a person is "under the influence" when the substance is present in his or her body.

¶84.    Bailey is the only State's witness who provided opinion testimony that Valentine was "under the influence." Maj. Op. ¶ 22. But Bailey's personal opinion of "under the influence" contradicts what this Court requires for proof of "under the influence." We have held that,

---

[14]On cross-examination, Bailey testified that, while she was qualified to "testify as a witness in the way that drugs-drug abuse, the types of drugs that we test throughout the crime, do affect a person's system[.]" But Bailey had not been tendered as an expert in pharmacology. Pharmacology is "[t]he science of drugs, including their composition, uses, and effects." *Pharmacology*, The American Heritage Dictionary of the English Language (1981).

in order to be "under the influence," one must be "driving in a state of intoxication that lessens a person's normal ability for clarity and control." **Leuer**, 744 So. 2d at 269 (internal quotation marks omitted) (quoting **Steven**, 134 F.3d at 528). To satisfy the standard, there must be proof beyond a reasonable doubt that the consumption of the drugs lessened the person's ability for clarity and control. To the contrary, Bailey's statement that Valentine became "under the influence" upon his consumption of the drugs does not satisfy Mississippi's legal standard because Bailey could not and did not say whether the drugs had lessened Valentine's normal ability for clarity and control. Bailey testified that she could not attest to the effects the drugs had on Valentine's clarity and control because she had not observed Valentine's behavior on the day of the wreck. Thus, Bailey's testimony proved only that Valentine had consumed the drugs prior to the crash.

¶85. The State's evidence can be summarized as follows: Valentine had consumed drugs before the crash, Valentine was speeding before the crash, Valentine was acting "hysterical" and "irate" after the crash, and the accident reconstructionist believed she smelled marijuana in the vehicle. Although Valentine's speeding and his "hysterical" behavior after being in a severe car crash raise questions for the fact finder,[15] this Court cannot say that a rational juror would find that these circumstances are probative or even indicative of a lessened ability for clarity and control due to Valentine's consumption of drugs. Even viewing the evidence in

---

[15]"[M]atters regarding the weight and credibility given the evidence are the province of the jury." **Cowart v. State**, 178 So. 3d 651, 666 (Miss. 2015) (citing **Ginn v. State**, 860 So. 2d 675, 685 (Miss. 2003)); *see also* **Gathright v. State**, 380 So. 2d 1276, 1278 (Miss. 1980) ("[T]he credibility of witnesses is not for the reviewing court." (citing **Davis v. State**, 320 So. 2d 789 (Miss. 1975))).

the light most favorable to the State, that evidence falls far short of proving that the drugs affected Valentine's "normal ability for clarity and control." *Leuer*, 744 So. 2d at 269 (citing *Steven*, 134 F.3d at 528). This Court has held that "[i]f any facts or inferences 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render.'" *Johnson v. State*, 81 So. 3d 1020, 1023 (Miss. 2011) (quoting *Bush*, 895 So. 2d at 843). Here, a reasonable person could find that Valentine's unsettled demeanor resulted from his just having been in a severe car crash and his just having learned of the death of his girlfriend. While the evidence does establish that Valentine had consumed drugs and that his speeding was irresponsible, it does not prove that Valentine's normal ability for clarity and control was impaired, *i.e.*, that he was "under the influence." That being an essential of the offense for which Valentine was tried, I would reverse and render.

> ### D) The trial court erred by denying Valentine's proposed Jury Instruction D-6.

¶86.    I disagree also with the majority's analysis regarding one of Valentine's proposed jury instructions. Valentine argues that the trial court erred by denying his proposed Jury Instruction D-6, contending that the instructions given "[were] insufficient because the State's toxicologist had stated that having a drug in one's system at all means one is under the influence." Maj. Op. ¶ 29. Valentine's proposed jury instruction was an accurate statement of the applicable Mississippi law and was needed not only to inform the jury of all the elements of the offense but also to provide the jury a correct statement of Mississippi law

on the element of driving under the influence, which had been stated incorrectly by the State's toxicology witness.

¶87. Valentine's proposed jury instruction D-6 says:

> The Court instructs the jury that mere consumption is insufficient to prove that a criminal defendant was driving "under the influence" of an intoxicant. To prove driving under the influence, the State must prove the drug inhibited the person's capacity to operate his vehicle with clarity and control.

Maj. Op. ¶ 26. When Jury Instruction D-6 was proffered to the trial judge, the State objected on the ground that it was duplicative of Jury Instruction D-5, which had been granted. Jury Instruction D-5 provided the definition of "under the influence" as defined by this Court in *Leuer*. Valentine's trial counsel disagreed that the instruction was duplicative and that if it were "then it would be just that second line which [was] duplicative." Valentine's counsel maintained that the first sentence in Jury Instruction D-6 was a correct statement of the law and was not covered in any other jury instruction. Additionally, Valentine submitted a modified copy of Jury Instruction D-6 that included only the sentence regarding mere consumption.[16] Yet the trial judge denied Valentine's proposed jury instruction and the modified version as well. The judge, relying on ***Langdon v. State***, 798 So. 2d 550 (Miss. Ct. App. 2001), reasoned that "[a]s long as they [sic] are instructions given that say, . . . you have to find that they were driving under the influence, that is sufficient."

---

[16]Any objections or arguments that Jury Instruction D-6 is duplicative of Jury Instruction D-5 are irrelevant as Valentine presented to the trial court a modified D-6 instruction, which did not define "under the influence" and contained only the instruction that "mere consumption is insufficient to prove that a criminal defendant was driving 'under the influence' of an intoxicant."

¶88.    The trial judge's and the majority's reliance on *Langdon* is misplaced. First, "Court of Appeals decisions are not binding on this Court[.]" ***Stewart v. Stewart***, 864 So. 2d 934, 937 (Miss. 2003). Second, the defendant in ***Langdon*** argued that the trial court erred by "refusing to instruct the jury that the mere act of ingesting alcohol is not, in itself, *negligence*." ***Langdon***, 798 So. 2d at 559 (emphasis added). The instruction in ***Langdon*** dealt with the element of negligence and not with the elements required to satisfy the "under the influence" standard. Lastly, the Court of Appeals made its decision because "[t]here was no contention by the State and no argument faintly suggesting that the prosecution was urging such a proposition." ***Langdon***, 798 So. 2d at 559. In ***Langdon***, the State did not assert or contend that merely ingesting alcohol was a negligent act. ***Id.*** But, in this case, the State did contend that mere consumption of an intoxicating substance is sufficient to deem a person to be "under the influence." The State advanced this position through its expert witness's testimony in which she repeatedly testified that a person is considered "under the influence" when the mere presence of an intoxicating substance is found in the person's system.

¶89.    The majority finds that "the State's toxicologist did not testify about the mere consumption of drugs found in Valentine's system. Rather, she testified to the effects of each drug on a person, once the drugs have been absorbed into a person's system." Maj. Op. ¶ 32. This is a mischaracterization of Bailey's testimony as a whole. Bailey repeatedly testified that a person is considered "under the influence" if the substance is present in the person's body. Unlike in ***Langdon***, the State made the contention that a person is deemed to be "under the

39

influence" by the mere presence of the intoxicating substance in the person's system. Thus, *Langdon* is distinguishable from this case.

¶90.    This Court has held that "[i]n reviewing jury instructions, the instructions must be read as a whole." ***Bay Point Props., Inc. v. Miss. Transp. Comm'n***, 201 So. 3d 1046, 1054 (Miss. 2016) (citing ***N. Biloxi Dev. Co., LLC v. Miss. Transp. Comm'n***, 912 So. 2d 1118, 1123 (Miss. Ct. App. 2005)). Without the proposed jury instruction, the jury instructions, as a whole, did not fully inform the jury of the law applicable to this case because the instructions did not state what is and what is not sufficient to prove a person was driving "under the influence." Here, Jury Instruction D-6 was a necessity in light of the State's expert witness's legally wrong opinion of "under the influence," which misled the jury regarding the proof required for the jury to find that Valentine had been driving "under the influence."

¶91.    Because Valentine's proposed jury instruction was an accurate statement of the law and was not covered elsewhere in the jury instructions, Valentine was "entitled to have [this] jury instruction[] given which present[ed] his theory of the case[.]" ***Victory v. State***, 83 So. 3d 370, 373 (Miss. 2012) (quoting ***Newell v. State***, 49 So. 3d 66, 74 (Miss. 2010)).

**E)    Cumulative Error**

¶92.    "The cumulative error doctrine stems from the doctrine of harmless error. . . [which] holds that individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." ***Harris v. State***, 970 So. 2d 151, 157 (Miss. 2007) (alteration in original) (internal quotation marks omitted) (quoting ***Ross v. State***, 954 So. 2d

968, 1018 (Miss. 2007)). "[A] defendant is not entitled to a perfect trial, only to a fair trial." *Wiley v. State*, 750 So. 2d 1193, 1211 (Miss. 1999) (internal quotation mark omitted) (quoting *Walker v. State*, 671 So. 2d 581, 629-30 (Miss. 1995)). "The question under the cumulative error rule, is whether the defendant has been denied his substantial right to a fair trial." *Id.* (citing *Hansen v. State*, 592 So. 2d 114, 142 (Miss. 1991)). Under plain error review, I find that the numerous errors found in this record amount to cumulative error and deprived Valentine of the fair trial to which he was entitled.

¶93. In addition to the errors already enumerated, the State erroneously referenced a noncontrolled substance, Topamax, as being a controlled substance that was prohibited by law to advance its argument that Valentine was under the influence of multiple controlled substances. Although the indictment charged Valentine with violating Section 63-11-30(1)(b), at a pretrial motion hearing the State informed the trial court that it "[would] not move forward with respect to subpart B of . . . our indictment." Since the State elected not to proceed under Section 63-11-30(1)(b), it limited itself to adducing only evidence regarding drugs or controlled substances that were prohibited by Mississippi law. Contrary to the State's toxicologist's testimony, Topamax is not listed as a prohibited controlled substance in Mississippi. See Miss. Code Ann. §§ 41-29-113 to -119.[17] Even though Alprazolam and Delta-9 THC are controlled substances, the State advanced its theory that Valentine was under the influence of controlled substances because of all three substances

---

[17]Additionally, the U.S. Food and Drug Administration (FDA) does not classify Topamax (Topiramate) as a controlled substance. *See* https://www.accessdata.fda.gov/drug satfda_docs/label/2012/020844s041lbl.pdf (last visited May 5, 2021).

41

identified by the toxicologist, who testified that since two of the drugs were central nervous system depressants, *i.e.*, Topamax and Alprazolam, those two drugs "would have compounding effect" and "increase . . . the types of effects" the drugs could have on a person. The State's improper usage of Topamax to strengthen its argument prejudiced Valentine because it allowed the jury to consider a noncontrolled substance's impact on a person when an essential element to the crime charged is that the substance be a prohibited controlled substance. Thus, the State's usage of the toxicologist's testimony regarding Topamax and its effects in conjunction with Alprazolam and Delta-9 THC was error. The evidence should have been limited to the crime charged, *i.e.*, driving under the influence of a prohibited controlled substance under Mississippi law. *See* **Palmer v. State**, 939 So. 2d 792, 795 (Miss. 2006) ("The general rule is that evidence of a crime, other than the one for which the accused is being tried, is not admissible." (citing **Ballenger v. State**, 667 So. 2d 1242, 1256 (Miss. 1995))).[18]

¶94. The State relied on a noncontrolled substance to enhance its argument in this case, the State's expert repeatedly gave unreliable testimony that effectively decreased the State's burden of proof, and the indictment failed to include sufficient facts and essential elements

---

[18]This Court has recognized exceptions to the general rule. *See* **Simmons v. State**, 805 So. 2d 452, 481 (Miss. 2001) ("However, where another crime or act is 'so interrelated [to the charged crime] as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences,' proof of the other crime or act is admissible. Proof of another crime or act is also admissible where necessary to identify the defendant, to prove motive, or to prove scienter." (alteration in original) (quoting **Duplantis v. State**, 644 So. 2d 1235, 1246 (Miss. 1994))); *see also* Miss. R. Evid. 404(b)(1). But the State's inclusion of Topamax in its prosecution of Valentine does not satisfy one of the exceptions because the State used evidence of another crime to prove that Valentine was guilty of the crime charged.

of the charge for which the State prosecuted Valentine. These errors when combined create such a prejudicial burden on Valentine and his defense that it was impossible for him to receive a fair trial, especially in light of his not having been charged with any crime whatsoever.

### F) Conclusion

¶95. Valentine's indictment was so deficient that he was not charged with any crime. For that reason alone his conviction should be reversed and rendered. Additionally, the State failed to provide sufficient evidence that Valentine was driving "under the influence," an essential element of the crime for which he was tried. The State's evidence was sufficient to prove that Valentine had consumed drugs, and it was sufficient to prove that Valentine's driving was negligent. But the State's evidence was not sufficient to prove that Valentine's normal ability for clarity and control had been affected adversely by the drugs. Proof of Valentine's consumption of the drugs alone is insufficient to prove that his ability for clarity and control had been impaired. At the very least, the numerous errors here require reversal of Valentine's conviction under the cumulative error doctrine.

¶96. I would reverse Valentine's conviction for aggravated driving under the influence and render a judgment in his favor.

**KING, P.J., AND ISHEE, J., JOIN THIS OPINION.**

43